[No. H008937. Sixth Dist. Jan. 14, 1992.]

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
ADVALLOY, INC., Real Party in Interest.

COUNSEL

Adams, Duque & Hazeltine, Jeffrey L. Fillerup and Peter A. Smalbach for Petitioner.

No appearance for Respondent.

Bostwick & Tehin and James J. O'Donnell for Real Party in Interest.

## OPINION

**CAPACCIOLI, Acting P. J.**—This is a petition for mandate or prohibition contending that the trial court lacked power to grant relief from default under the Discovery Act in this case. We agree that the trial court should not have allowed relief from deemed admissions, for reasons we will state.

### INTRODUCTION

Petitioner St. Paul Fire & Marine Insurance Company (St. Paul) is the insurer defendant in the lawsuit of real party plaintiff Advalloy, Inc. (Advalloy) for breach of contract and bad faith denial of coverage in this environmental insurance coverage case. This petition for writ of mandate or prohibition seeks extraordinary review of the trial court's order granting Advalloy relief from deemed admissions. St. Paul argues that: (1) under the new Discovery Act the court lacks power to grant any relief from discovery defaults under Code of Civil Procedure section 473 and can only give relief within the strict confines of Code of Civil Procedure section 2033, and further, that subdivision (m) of that statute allows default relief only where some replies to admissions requests have been made, and not where there is total failure to respond to requests for admissions by the time a hearing is held under the statute; and (2) even if the court does retain inherent power to relieve from default it lacked such power here because none of the traditional excuses for default apply to this case.

### RECORD

Advalloy brought the underlying lawsuit against several insurers including St. Paul for breach of contract, breach of the covenant of good faith, and breach of fiduciary duty. St. Paul was sued in its capacity as the issuer to Advalloy of a policy of comprehensive general liability insurance also including other coverages such as excess and umbrella liability. The complaint sought to establish obligations of coverage and duty to defend against the various insurers for damages caused by toxic contamination due to discharge of hazardous wastes used in Advalloy's business.

St. Paul served its first request for admissions on Advalloy October 2, 1989. It asked Advalloy to admit that it had no copy of the alleged policy and did not know any of its terms or provisions. It further requested an admission that in May 1988, St. Paul's attorneys had advised Advalloy that they had been unable to locate a copy of the alleged policy in the company's records, and that they had no information from which they could determine any information about the policy; and that Advalloy had furnished no information about the policy to the insurer other than a policy number.

In its response to these requests for admissions, dated November 30, 1989, Advalloy admitted that it could not find the policy, but denied that it did not know the terms of coverage.

On February 5, 1990, Advalloy filed for bankruptcy.

St. Paul served a second set of requests for admissions on Advalloy on February 20, 1990. It asked Advalloy to admit that it had failed and was unable to produce any invoices, receipts, cancelled checks, or other records showing its payment of insurance premiums to St. Paul from 1978 to 1980, inclusive (the period for which coverage was sought).

On November 1, 1990, St. Paul served a third set of requests for admissions in which it asked Advalloy to admit that it cannot prove the terms and conditions of the alleged policy; that if the policy had been issued it would have included standard form exclusions; that it would have included a pollution exclusion; that it would have provided that the defense obligation applies only to lawsuits filed against the insured (as opposed to cleanup directives regarding toxic contamination); and that Advalloy's claims alleged in paragraph 13 of the complaint do not seek damages but rather seek equitable relief.

Paragraph 13 of the complaint alleges that the California Regional Water Quality Control Board and Ford Aerospace Corporation have claimed that hazardous waste discharge from the operation of Advalloy's business have caused property damage to the property of California and Ford Aerospace, and they are proceeding pursuant to the California Water Code and other law for damages, remediation, and "redress of such property damage."

On February 28, 1991, St. Paul filed a noticed motion for an order deeming St. Paul's second and third requests for admissions admitted, and requesting sanctions.

Responding to the motion, the trustee in bankruptcy of Advalloy declared that for several months it had tried to obtain the files in this action from the attorneys who had represented Advalloy before the declaration of bankruptcy, and only in the end of February 1991 were they released. The trustee's counsel did not know that discovery was outstanding and responses were due until it received St. Paul's noticed motion for deemed admissions on February 28, 1991. The trustee requested time to hire special counsel, saying she did not yet have appropriate representation, and asked for relief from default on these grounds.

Attached to this response of the trustee was documentation of correspondence beginning December 14, 1990, attempting to obtain the files from Advalloy's counsel, Lerner & Veit.

The trustee's response was not accompanied by any responses to the requests for admissions.

On April 9, 1991, the court granted St. Paul's motion for deemed admissions. The court imposed sanctions of $350 on the law firm of Lerner & Veit, counsel for Advalloy.

Advalloy moved for reconsideration. It sought default relief pursuant to Code of Civil Procedure section 473. It alleged that the reason it did not respond to St. Paul's requests for admissions (second and third set) was that Advalloy had petitioned for bankruptcy and former counsel thought that the effect of such a petition was to stay the civil action. Further, it alleged that there were new facts, namely that Advalloy's new counsel had located an expert insurance archaeologist who said he could locate the missing St. Paul policy. It also argued that counsel's mistake of law, that the bankruptcy stayed a suit by the bankrupt, was grounds for default relief. It said counsel had reasonably misconstrued the bankruptcy law, 11 United States Code section 362(a)(1), the automatic stay provision, which provides in pertinent part that a petition filed under the bankruptcy law stays " '. . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . .' "

No answers accompanied this request for reconsideration.

On April 24, 1991, the trial court denied Advalloy's motion for reconsideration without prejudice to Advalloy renewing the motion before the hearing on St. Paul's motion for summary judgment (which it had made based on the deemed admissions) and after Advalloy obtained the insurance policy from the insurance archaeologist consultant.

Advalloy renewed the motion for reconsideration on May 17, 1991. It alleged it had obtained a copy of the policy and requested relief as to at least the third set of deemed admissions which sought information affected by the new evidence. The motion was not accompanied by any responses to the admissions requests. At the hearing on this motion, Advalloy presented evidence that it had not yet found the actual policy cover sheet, but that its expert insurance archaeologist believed it to be of a type used by St. Paul during the time period in issue, and Advalloy presented the policy form of that type. Counsel for Advalloy informed the court that the St. Paul policy number previously provided by Advalloy to St. Paul included information about the type of policy which should enable St. Paul to interpret the policy.

In its reply to St. Paul's opposition to the second reconsideration motion, Advalloy submitted responses to the requests for deemed admissions. This reply was dated May 15, 1991. The responses may be summarized as follows: Advalloy could not admit or deny the request for an admission that it had produced no documentation of its payment of premiums, but said it had made a reasonable inquiry to obtain this information and still did not have enough. It denied that it cannot prove the terms of the policy. It specifically admitted or denied the various requests for admissions regarding what the policy would have, or did, contain. And it denied that St. Paul's response to its claim was reasonable, timely and justifiable.

On August 20, 1991, the trial court denied the motion without prejudice, and said Advalloy may renew the motion should it be able to obtain the policy at issue.

On August 23, 1991, Advalloy noticed a third motion for reconsideration. There it said that it has conducted discovery since May 17, 1991, and continues to conduct discovery to establish whether a specific policy was issued or not, and that it cannot at this time present the policy, but that it can present substantial evidence proving the terms and conditions of the policy at issue. It also pointed out that in supplemental responses to Advalloy's first request for admissions St. Paul admits that it issued a policy to Advalloy of the number specified by Advalloy (policy No. 694NA4304) sometime between 1973 and 1986, that it is a commercial policy, probably multicoverage, issued from the San Jose branch, and that it was most probably a comprehensive general liability policy. Advalloy also alleged it had great difficulty obtaining information from St. Paul regarding the policy including its responses that it had no information from which it could determine the type of policy, despite acknowledging that it had policy No. 694NA4304 and information regarding the claim filed on the policy, and later admitting that the number indicates it is a commercial policy with the terms and coverages described above. According to Advalloy, "St. Paul's initial representations concerning the existence, terms and conditions of the plaintiff's insurance coverage have been less than candid and clearly evasive."

The evidence of the policy which Advalloy had by then unearthed (much of it from locked Advalloy offices which had been shut down during the bankruptcy) included notarized proof of loss forms from 1979 showing the policy number. Based on these documents, Advalloy's expert testified that a particular insuring agreement known as insuring agreement No. 36 was "likely" the insuring agreement for the Advalloy policy.

Advalloy also described confusion which existed at the time of the second and third requests for admissions concerning what law firm was representing Advalloy. It alleged that Jon Heim, formerly of Lerner & Veit, was the attorney in charge of this lawsuit, and he left Lerner & Veit in September of 1990. His firm then believed the civil action was stayed by the bankruptcy. The third request for admissions was served after Mr. Heim had left Lerner & Veit and was served on Mr. Heim. The February 8, 1991, letter from St. Paul informing Advalloy that a motion would be brought for deemed admissions was also sent to Jon Heim, nearly five months after he had left the firm. Advalloy cited these mishaps in addition to the confusion over the bankruptcy law as grounds for relief on the basis of excusable neglect.

In its response to the third request for reconsideration, St. Paul alleged prejudice if relief were granted. It alleged that had Advalloy responded to discovery in a timely fashion, it would have been in a position to locate witnesses and depose them beginning in March 1990, to establish the basis of its pollution exclusion, property owned exclusion, and other defenses. It cited other failures of Advalloy to respond to discovery, not only the failure to respond to admissions requests, but also nonresponsive discovery responses in November 1989, to requests for production of documents and interrogatories, as well as failure to respond to a second round of discovery (interrogatories and requests for production of documents) served in February 1990, and not responded to until July 22, 1991. Also St. Paul claimed that the July 1991 responses reveal that Advalloy still does not know who all the witnesses are, and those who can be identified cannot be located or have moved out of California. Also, because of the intervening petition in bankruptcy, many key witnesses have left Advalloy's employ and moved out of state.

The court granted Advalloy's third reconsideration motion. It ordered that the admissions to St. Paul's second and third requests be withdrawn and Advalloy was given leave to serve responses within 20 days from August 23, 1991 (the date of the hearing on the motion.) Sanctions of $3,000 were imposed on Advalloy. It further ordered that Advalloy pay the reasonable costs and attorneys' fees St. Paul incurred in proving its pollution exclusion defense if it prevailed on that issue and if Advalloy denied any part of request No. 20, which asked for an admission that the policy would have included a pollution exclusion.

## DISCUSSION

### *Whether Code of Civil Procedure section 2033, subdivision (m) applies to failure to respond to requests for deemed admissions*

 St. Paul argues that Code of Civil Procedure section 2033, subdivision (k)[1] does not permit default relief for complete failure to file any responses to requests for admissions by the time of the hearing on the motion for relief from deemed admissions, and that subdivision (m) of that same statute, providing for withdrawal or amendment of admissions, does not apply to a total failure to file responses.

California appellate districts conflict on the point whether section 2033 permits deemed admissions to be set aside where there is total failure to respond to requests for admissions, or whether the statute permits default relief only to allow amendment or withdrawal of admissions actually made. The Second Appellate District has adopted the position that no relief is available when there is total failure to respond to requests for deemed admissions. (*Courtesy Claims Service, Inc.* v. *Superior Court* (1990) 219 Cal.App.3d 52 [268 Cal.Rptr. 30]; hereafter *Courtesy Claims.*) The Third Appellate District has read the statute differently, as permitting default relief for total failure to respond to admissions requests. (*Santa Patricia Investments, Inc.* v. *Superior Court** (Cal.App.); hereafter *Santa Patricia.*)

The rationales of the conflicting decisions are as follows. The decision of the Third Appellate District in *Santa Patricia* interprets section 2033, subdivision (m) as allowing relief in two kinds of default situations: failure to respond to requests for admissions, and responses which are inadequate or in need of amendment. The statute provides that "[a] party may withdraw or amend an admission made in response to a request for admission" only on leave of court and that the court may "permit withdrawal or amendment of an admission only if it determines that the admission was the result of mistake, inadvertence, or excusable neglect, . . ." The *Santa Patricia* court finds this language ambiguous; it could apply either to total failure to respond to requests for admissions or to defective admissions, in that court's opinion. The opinion focuses on the phrase " 'an admission made in response to a request for admission,' " saying the "admission" could be either an actual defective admission or a "deemed admission" resulting from court order after a total failure to respond to requests for admissions. Then, assuming there is ambiguity in the statute, the court interprets it as allowing

[1]Further statutory references are to the Code of Civil Procedure unless otherwise stated.

*Reporter's Note: Rehearing granted, June 28, 1991 (C009333). The subsequent opinion was filed October 9, 1991, but was not certified for publication.

default relief in both situations, because it would be "unjust" to allow relief in only one of these situations and to "conclude that the relief accorded a waiver of objections to an admission is absolutely barred no matter what the reason for failure to file a response by the time of the hearing on the motion to deem a request admitted and no matter what the reason for delay." (*Santa Patricia, supra.**)

The Second Appellate District, however, in *Courtesy Claims* disagreed, saying subdivision (m) only applies to a party who has actually made an admission in response to a request. (*Courtesy Claims, supra*, 219 Cal.App.3d at pp. 56-57, citing Reporter's Notes, State Bar/Judicial Council Joint Com. on Discovery, 3 Hogan, Modern Cal. Discovery (4th ed. 1988) 254, 255.) The *Courtesy Claims* decision focuses on the latter part of the statutory language, referring to the court's discretion to "permit *withdrawal or amendment of an admission* only if it determines that the admission was the result of mistake, inadvertence, or excusable neglect, . . ." (§ 2033, subd. (m), italics added.) The court believed that when no responses are filed, there is nothing to "withdraw or amend" within the language of section 2033, subdivision (m). Further, section 2033, subdivision (k) by its terms applies only when the party has served a response in substantial compliance with the statute before the hearing is held on the motion for deemed admissions.[2]

We hold that *Courtesy Claims* is correctly decided. *Courtesy Claims* has the better argument because of the implications of the construction of section 2033. One subdivision, subdivision (k), controls relief when there is failure to serve a timely response, and in that instance allows default relief for excusable neglect after service of a complying response. (See fn. 2, *ante*.) The other subdivision, subdivision (m), controls relief for the purpose of allowing withdrawal or amendment of "an admission made in response to a request for admission . . ." Plainly, subdivision (k) is intended to control default relief for total failure to respond, and subdivision (m) is intended to

---

*See Reporter's Note, *ante*, page 850.

[2]Subdivision (k) of section 2033 reads in pertinent part "[i]f a party to whom requests for admission have been directed fails to serve a timely response, that party thereby waives any objection to the requests, . . . However, the court, on motion, may relieve that party from this waiver on its determination that (1) the party has subsequently served a response that is in substantial compliance with subdivsion (f), and (2) the party's failure to serve a timely response was the result of mistake, inadvertence, or excusable neglect. [¶] The requesting party may move for an order that the genuiness of any documents and the truth of any matters specified in the requests be deemed admitted, as well as for a monetary sanction under Section 2023. *The court shall make this order, unless it finds that the party to whom the requests for admission have been directed has served, before the hearing on the motion, a proposed response to the requests for admission that is in substantial compliance with paragraph (1) of subdivision (f)."* (Italics added.)

control default relief for erroneous or mistaken responses which the responder wishes to correct. The *Santa Patricia* case interprets subdivision (m) as allowing relief for total default also, but that interpretation makes subdivision (k) useless or duplicative, a disfavored statutory construction. (*Playboy Enterprises, Inc.* v. *Superior Court* (1984) 154 Cal.App.3d 14, 20-21 [201 Cal.Rptr. 207].) We hold that the clearly applicable subdivision for failure to respond, which we have here, is subdivision (k), and that subdivision does provide unambiguously that relief is available only after a response has been made. Further that response must have been made before the hearing is held on the motion to compel deemed admissions.

It follows that the trial court here had no power to grant default relief, and we must issue the writ.

■ Advalloy makes the additional argument that we need not construe section 2033 because the controlling statutes are section 473, allowing relief from default, and section 1008, allowing reconsideration on a motion. This argument is without merit. Since section 2033 specifically sets out the conditions under which default relief from erroneous admissions can be given, that statute must control rather than the general default statute, section 473. Also the new Discovery Act has specifically eliminated from the language of section 2033 the option to grant default relief under section 473. The statute formerly provided that if a party failed to respond to admissions requests, the requests were automatically deemed admitted, but the party could apply for relief under section 473 by a timely motion for relief. The statute now contains no reference to section 473 and instead contains its own internal procedures described above in subdivisions (k) and (m) for obtaining relief from default. Also the new statute now incorporates the language of section 473 regarding relief on the basis of mistake, inadvertence, or excusable neglect. (§ 2033, subd. (m).) The legislative intent could not be clearer. Section 2033 supersedes section 473 as the avenue to obtain default relief in a situation of failure to respond to admissions requests. (See also *City of Fresno* v. *Superior Court* (1988) 205 Cal.App.3d 1459, 1467 [253 Cal.Rptr. 296].)

■ As for reconsideration, although it is true that reconsideration is always available based on new facts after a motion is decided, here the issue is not factual but legal; the question is whether the court had any discretion to exercise in the first place. Since it did not, no amount of changed facts can allow it to grant relief.

Real party in interest has been notified that a peremptory writ in the first instance could be issued here, and it has filed opposition. The peremptory

writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

DISPOSITION

Let a writ of mandate issue as prayed, commanding respondent Superior Court to vacate the ruling granting Advalloy's third motion for reconsideration of the court's order granting St. Paul's motion to deem requests for admissions admitted, and instead to issue an order denying said motion for reconsideration. St. Paul as prevailing party shall have costs in this proceeding.

Premo, J., and Cottle, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied April 23, 1992. Mosk, J., was of the opinion that the petition should be granted.