[No. G010067. Fourth Dist., Div. Three. Feb. 7, 1992.]

RAYMOND J. FRANCIS et al., Plaintiffs and Appellants, v.
DUN & BRADSTREET, INC., Defendant and Respondent.

**COUNSEL**

Thomas H. Cadden for Plaintiffs and Appellants.

Kirkland & Ellis, Jeffrey S. Davidson and Scott D. Devereaux for Defendant and Respondent.

**OPINION**

**SILLS, P. J.**—In this case we hold that plaintiffs may not maintain causes of action for defamation and related torts against a credit reporting company which publishes a report which plaintiffs concede is true. This is hardly a groundbreaking result; truth has been used as a defense to a defamation

action in this country ever since John Peter Zenger's trial in 1735.[1] Plaintiffs seek to avoid the truth, so to speak, by claiming that the factual credit report implies they are not creditworthy. We reject this contention; truth is an absolute defense.

FACTS

The facts, literally, are not in dispute. In the late 1970's, plaintiff Raymond J. Francis started an entity called Crisp International, which manufactured potato chips. In 1982 Crisp International crumbled and was forced into bankruptcy proceedings. Sometime in mid-1982, Francis became involved with another company called California Trim Plan, a diet business. In August 1985, he resigned as president and chairman of the board of directors of California Trim Plan, and his wife Maria resigned as secretary. California Trim Plan filed a voluntary petition for bankruptcy three months later.

In 1989, Dun & Bradstreet published a credit report regarding plaintiff California Diet Worldwide (Cal Diet), the corporation with which Francis is currently affiliated. The report contained the following two paragraphs, set forth here in their entirety:

"On Jan 28, 1982, Crisp International Inc., a Georgia Corporation, filed a petition under Chapter Eleven of the Bankruptcy Act, Case #SA82-00335 (PE) in U S Bankruptcy court, Santa Ana, CA. The petition was signed by Raymond J. Francis, President. According to a declaration filed February 2, 1982, Raymond J. Francis and his wife, Maria Francis, owned all the stock at the time of the filing. On November 11, 1982, the petition was converted to a Chapter 7 and the case was closed on October 30, 1986. Comment: According to a letter dated June 8, 1982, from Fulop & Hardee, attorneys for Crisp International, Crisp suffered millions of dollars of losses when it was sold defectively designed containers which caused product damage, thereby forcing Crisp into bankruptcy proceedings.

"On Nov 1, 1985, California Trim Plan Inc. a/k/a California Natural Foods Corporation, filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Act, Case #SA85-04586 (PE) in the U S Bankruptcy Court in Santa Ana, CA. The petition was signed by Michael F. Lambert, president. On August 25, 1987, the case was converted to a Chapter 7 proceeding. The trustee declared this a no asset case on December 19, 1987, and the case was closed on February 10, 1989. According to Mr. Francis, he and his wife were

---

[1] A thorough recounting of Zenger's case, complete with the closing argument of Zenger's attorney, Andrew Hamilton, can be found in Angle, By These Words: Great Documents of American Liberty (1954) at pages 49-58.

no longer affiliated with the company at the time of the bankruptcy. Raymond J. Francis provided Dun & Bradstreet with a letter dated August 7, 1985, in which he resigned as president, chairman and member of the board of directors, and Maria Francis resigned as secretary of California Trim Plan, effective the following day. In that letter Mr. Francis attributed the resignations to conflict and litigation among the members of the board of directors, and to his dissatisfaction with the actions taken by various other officers/directors of the company."

Prior to publication of the credit report, Francis asked Dun & Bradstreet to omit reference to the two bankruptcies, claiming they were affecting his credit.[2] Dun & Bradstreet refused. According to Francis, after publication of the report Cal Diet lost a $1 million revolving credit line with Barclays Bank, lost a "factoring arrangement" it had with Republic Factoring, and was declined a loan from City National Bank. Francis stated these events occurred because the various financial institutions felt Francis was responsible for the bankruptcy of California Trim Plan.

Francis and Cal Diet filed a complaint against Dun & Bradstreet in December 1989, alleging defamation, interference with prospective economic advantage, injurious falsehood, and intentional infliction of emotional distress. Five months later, after answering the complaint and deposing Francis, Dun & Bradstreet filed a motion for summary judgment. It asserted that all the statements in its credit report were true, and submitted copies of letters and bankruptcy court documents to back up its claim. In their opposition, plaintiffs conceded that every statement in the credit report was "uncontroverted." They contended, however, that the credit report taken as a whole implied Francis was responsible for the prior bankruptcies. The trial court was not impressed, stating that the report was not reasonably subject to plaintiffs' interpretation and that plaintiffs had "enlarged the meaning of the statement which does not appear to the court to be ambiguous at all."

## Discussion

### I

■ Although plaintiffs' notice of appeal states they are appealing "from the judgement made and entered in the above-entitled action on Tuesday August 21, 1990," there in fact is no judgment. Thus, plaintiffs are attempting to appeal from a nonappealable order. Unfortunately, this is a common mistake among attorneys. (See cases collected in *Cohen* v. *Equitable Life*

---

[2]If Francis's request indeed predated publication, we do not understand how the unpublished credit report could have harmed Francis at that time.

*Assurance Society* (1987) 196 Cal.App.3d 669, 671 [242 Cal.Rptr. 84].) If the present case were pending in the Court of Appeal for the Third District, this mistake would be fatal. (*Modica v. Merin* (1991) 234 Cal.App.3d 1072, 1074-1075 [285 Cal.Rptr. 673].) Although we agree with some of the sentiments expressed in the *Modica* opinion, we nonetheless question the wisdom of dismissing an appeal where the judgment itself was little more than a formality, especially when the case has been fully briefed. For example, if we were to dismiss this appeal, plaintiffs would merely go back to superior court, obtain a judgment, and appeal again. This would result only in a complete waste of time.

As a reviewing court, our task is to resolve appeals on the merits if at all possible.[3] Therefore, consistent with our past practice, "we construe the order [granting summary judgment] to incorporate a judgment in the interests of justice and to avoid delay." (*Lindgren v. Baker Engineering Corp.* (1988) 197 Cal.App.3d 1351, 1352, fn. 1 [243 Cal.Rptr. 476], internal quotation marks omitted.)

## II

■ Plaintiffs contend that, while each one of Dun & Bradstreet's statements is true, taken together they imply Francis was responsible for the bankruptcies of his two prior businesses. Plaintiffs argue they are the victims of defamation by innuendo. We, however, are persuaded by a very similar case from the Ninth Circuit, *Lyon Furniture Mercantile Agency v. Carrier* (9th Cir. 1958) 259 F.2d 106. In *Carrier*, plaintiff sued a credit reporting agency regarding a report which stated, among other things, " 'Inquiry at this time finds payments generally slow.' " (*Id.* at p. 109.) The report also stated that the bulk of plaintiff's purchases were being made on a C.O.D. basis. (*Id.* at p. 110.) Plaintiff asserted she was defamed because the report implied her business was not creditworthy. Plaintiff's own testimony, however, established that payments from the business were indeed slow during the year in question, and that she voluntarily made purchases on a "cash before delivery" (C.B.D.) basis, which was more onerous for her than C.O.D. (See *id.* at p. 111.)

The Ninth Circuit in *Carrier* reversed a trial court verdict in plaintiff's favor, finding that the report was true or (in the case of the C.O.D. question) at least substantially true. In so doing the court made the following statements, with which we are in complete agreement: "It may well be that the reports as to the financial condition of the business, as contained in the Lyon

[3]Respondent does not seek dismissal of the appeal, which is yet another reason to decide this case on the merits.

publications, adversely affected the credit of the business. That is almost always the effect of an unfavorable report. Mrs. Carrier's attorney made it clear, during his closing argument, that the real harm done by the Lyon reports was the statement therein that her statement 'shows liquid and current ratio sub-standard.' But this statement was patently true." (259 F.2d at p. 112.)

*Carrier* stands for a sound proposition of law: A credit report, even one that causes harm, is not defamatory if it is true. In the present case, as in *Carrier*, a report containing facts adverse to the business can well cause problems securing credit. But one cannot sue the credit reporting agency just because the business (or people involved with the business) has had financial problems in the past. Plaintiffs' brief goes on at length about "innuendo," "implication," and "reading the report as a whole," but all of this discussion is irrelevant. There can be no defamation without a false statement of fact, and plaintiffs admit all the statements are true. As one court held recently (and succinctly), "Plaintiff's admission of truth bars his defamation cause of action." (*Hejmadi* v. *AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 553 [249 Cal.Rptr. 5].) We wonder how plaintiffs (or their attorneys) could have ever thought they had a cause of action for defamation.

### III

■ There remains the fate of plaintiffs' remaining causes of action, namely, interference with prospective economic advantage, injurious falsehood, and intentional infliction of emotional distress. Unfortunately for plaintiffs, the admitted truth of Dun & Bradstreet's credit report eviscerates these causes of action as well. In *Jennings* v. *Telegram-Tribune Co.* (1985) 164 Cal.App.3d 119 [210 Cal.Rptr. 485], we held that causes of action for invasion of privacy, intentional infliction of emotional distress, injurious falsehood, interference with contractual relations, and interference with prospective economic advantage were all barred once plaintiff's defamation claim was found privileged. (*Id.* at p. 129.) If a statement is protected, either because it is true or because it is privileged, that " 'protection does not depend on the label given the cause of action.' " (*Ibid.*, quoting *Reader's Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244, 265 [208 Cal.Rptr. 137, 690 P.2d 610]).[4]

Plaintiffs do not attempt to refute the rationale of *Jennings*, but instead rely solely upon *U.S. Aluminum Siding Corp.* v. *Dun & Bradstreet, Inc.*

---

[4]See also *Masoni* v. *Board of Trade of S.F.* (1953) 119 Cal.App.2d 738, 743 [260 P.2d 205] ("truthfully informing the creditors of plaintiffs' ability to pay" provides no basis for finding the defendant's conduct an intentional interference with contractual relations); *Polygram Records, Inc.* v. *Superior Court* (1985) 170 Cal.App.3d 543, 549 [216 Cal.Rptr. 252] ("in an action for injurious falsehood, the plaintiff must plead and prove that the statement is false"); *Fowler* v. *Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 45 [241 Cal.Rptr. 539] (alleged

(S.D.N.Y. 1958) 163 F.Supp. 906. In *U.S. Aluminum*, plaintiff filed suit over a credit report stating that two of its employees were the subject of criminal indictments, arrests, and convictions. (*Ibid.* at p. 906.) The complaint did not allege that this statement was false, but instead proceeded on a New York state law theory called "prima facie tort," by which true statements may be actionable "where the maker acts solely out of malice or malevolence." (*Id.* at p. 907.) The district court denied Dun & Bradstreet's motion to dismiss for failure to state a claim, holding that truth was irrelevant: the only issue was malice. We find *U.S. Aluminum* unpersuasive. In California, truth is a complete defense to a defamation action regardless of the malice or ill will of the publisher. (See, e.g., *Washer* v. *Bank of America* (1948) 87 Cal.App.2d 501, 509 [197 P.2d 202]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 494, p. 583.) We cannot believe this defense can be abrogated merely because an artful pleader chooses to label the cause of action "prima facie tort" rather than defamation.

## CONCLUSION

Dun & Bradstreet defended this action in the best way the law currently allows: it answered the complaint, conducted four months' worth of discovery, established that its credit report was true, and filed a motion for summary judgment. It is almost a shame Dun & Bradstreet had to do that much. Credit reports are sometimes unflattering, but they are necessary in modern society. If a credit report is untrue, the agency should be held responsible. (See, e.g., *Dun & Bradstreet, Inc.* v. *Greenmoss Builders* (1985) 472 U.S. 749 [86 L.Ed.2d 593, 105 S.Ct. 2939].) Here, however, plaintiffs knew before they filed suit that the report was true, and Dun & Bradstreet nonetheless was required to defend the action and respond to this appeal. We hope this is the last chapter to this lawsuit. The judgment is affirmed.

Sonenshine, J., and Crosby, J., concurred.

---

accusations of disloyalty do not raise a triable issue of fact on cause of action for emotional distress because the accusation was true). Further, section 772 of the Restatement (Second) of Torts provides: "One who intentionally causes a third person . . . not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person . . . truthful information."