[No. G013481. Fourth Dist., Div. Three. June 30, 1995.]

ROBERT DEMYER et al., Plaintiffs and Appellants, v.
COSTA MESA MOBILE HOME ESTATES et al., Defendants and
Respondents.

## COUNSEL

Peter L. Recchia and Stephen I. Blanchfill for Plaintiffs and Appellants.

Swanson & Dowdall, Swanson & Gieser and Jim P. Mahacek for Defendants and Respondents.

## OPINION

## SILLS, P. J.—

### INTRODUCTION

The law governing the consequences for failing to respond to requests for admission may be the most unforgiving in civil procedure.[1] There is no relief under section 473. The defaulting party is limited to the remedies available

---

[1]All statutory references in this opinion unless otherwise specifically noted are to the Code of Civil Procedure. All references to subdivisions, unless otherwise specifically noted, are to section 2033 of that code.

in the statute specifically governing requests for admission, section 2033,[2] and within section 2033 there is no general provision for relief. The closest analog to section 473 in section 2033 is subdivision (m), which allows withdrawal or amendment of an admission upon a showing of mistake, inadvertence or excusable neglect. Subdivision (m), however, has been held inapplicable to missing the deadline for responding to admissions requests.[3] A party who has failed to file responses must look to subdivision (k) for relief, and subdivision (k) operates in a completely nondiscretionary manner. The propounding party need give no warning (at least according to one well-respected authority[4])—it simply files a motion to deem the matters covered by the requests admitted. The nonresponding party then has until the "hearing on the motion" to serve responses to the admissions request.[5] If the party manages to serve its responses before the hearing, the court has no discretion but to deny the motion.[6] But woe betide the party who fails to serve responses before the hearing. In that instance the court has no discretion but to grant the admission motion,[7] usually with fatal consequences for

---

[2]*St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1992) 2 Cal.App.4th 843, 852 [3 Cal.Rptr.2d 412] ("The statute now contains no reference to section 473 and instead contains its own internal procedures described . . . in subdivisions (k) and (m) for obtaining relief from default."); accord: *Tobin* v. *Oris* (1992) 3 Cal.App.4th 814, 828, footnote 24 [4 Cal.Rptr.2d 736] (". . . the legislative history of the Civil Discovery Act of 1986 makes it clear that the provisions of section 2033, not section 473, will be the means for obtaining any relief from default arising from a failure to respond to a request for admissions").

[3]*St. Paul Fire & Marine Ins. Co.* v. *Superior Court, supra*, 2 Cal.App.4th at pages 851-852 ("Plainly, subdivision (k) is intended to control default relief for total failure to respond, and subdivision (m) is intended to control default relief for erroneous or mistaken responses which the responder wishes to correct."); *Courtesy Claims Service, Inc.* v. *Superior Court* (1990) 219 Cal.App.3d 52, 56-57 [268 Cal.Rptr. 30] (rejecting argument that subdivision (m) afforded relief from failure to respond because that subdivision "applies only to a party 'who has made an admission in response to a request' ").

[4]Weil and Brown, California Practice Guide: Civil Procedure Before Trial (The Rutter Group 1994) section 8:1373.1, page 8G-23 ("Since this motion deals with a *failure* to respond, rather than inadequate responses, *no* attempt need be shown to resolve the matter informally . . . ."). Weil and Brown extrapolate this conclusion from the rule governing the complete failure to respond to *interrogatories*, set forth in *Leach* v. *Superior Court* (1980) 111 Cal.App.3d 902, 904-906 [169 Cal.Rptr. 42] (rejecting argument that state rule of court requiring informal meet and confer applied to motion where no response at all had been made to interrogatory requests, reasoning that because objections had been waived for failure to timely answer, there was "nothing to 'resolve' with the meaning" of the rule).

[5]Section 2033, subdivision (k) (after party moves for order deeming matters specified in request admitted, the "court shall make [the] order, unless it finds that the party to whom the requests for admission have been directed has served, before the hearing on the motion, a proposed response to the requests for admission").

[6]*Tobin* v. *Oris, supra*, 3 Cal.App.4th 814, 828 ("where a proposed response *is* served prior to the hearing . . . then the motion may *not* be granted").

[7]*Courtesy Claims Service, Inc.* v. *Superior Court, supra*, 219 Cal.App.3d at pages 55-57 (holding that trial court was without authority to deny motion to compel and give responding party extra time to submit responses).

the defaulting party.[8] One might call it "two strikes and you're out" as applied to civil procedure.

Everything, in short, depends on submitting responses prior to the hearing. There are no general grounds for relief, no provision for attorneys to "fall on their sword," pay sanctions and pick up where they left off. If responses are not submitted by the hearing date there is only the certain fearful looking for of a malpractice judgment.[9]

The instant appeal arises out of a situation even more draconian than just described. What happens when time is *shortened* for the "hearing" on the motion to deem matters admitted? If the statute is read to require submission of responses before a hearing on shortened notice, the effective time to respond is also shortened. A litigant may find itself with an unreasonably short time—and possibly in extreme situations, no time at all—in which to redeem itself. The practical effect would be something like "one strike and a foul ball and you're out."

As harsh as the basic scheme governing nonresponses to requests for admission is, it is not quite *that* harsh. As we will now explain, the "hearing" contemplated in section 2033, subdivision (k) necessarily does not entail a hearing on shortened time. Rather, the statute contemplates at least the standard notice a litigant would receive for a hearing. Because the appellants here managed to submit responses within the time that they normally would

---

[8]Requests for admission may cover both "controversial matter" and "opinion." (See *Cembrook* v. *Superior Court* (1961) 56 Cal.2d 423, 429 [15 Cal.Rptr. 127, 364 P.2d 303] ("the fact that the request is for the admission of a controversial matter, or one involving complex facts, or calls for an opinion, is of no moment"). In the language of section 2033, subdivision (a), requests can establish the truth of "opinion relating to fact, or application of law to fact." Hence there is strong temptation to draft requests for admission which, if deemed true, would result in the unconditional surrender of the party on whom they are served. For example, "Admit you have absolutely no grounds to prosecute [or defend] this case." This example is not all that uncommon. (See *Tobin* v. *Oris, supra,* 3 Cal.App.4th at p. 819, fn. 6 [examples of admission requests that, if deemed admitted, would terminate litigation in crushing victory for propounding party].)

[9]And malpractice with an even more attenuated relationship to the actual merits of the case than either failing to file a timely notice of appeal or allowing a default judgment to be taken. At least in the case of failing to appeal there is an underlying decision which itself may reflect a just disposition of the merits of the case. And in a default, the winning party is at least required to show a judge some real evidence on the question of liability and damages. (See *Tobin* v. *Oris, supra,* 3 Cal.App.4th at p. 823, fn. 16; *Brigante* v. *Huang* (1993) 20 Cal.App.4th 1569, 1588 [25 Cal.Rptr.2d 354] ["The present framework of the statute [section 2033] allows a judgment to be predicated entirely on the matters deemed admitted, without even the one-sided prove-up review that is required in the case of a true default under section 585."].) A judgment based on a default to requests for admissions, on the other hand, may have absolutely no relation to the merits.

have had, the trial court had no choice but to deny the motion to deem matters admitted, and therefore the ensuing summary judgment should not have been granted.

## FACTS

The plaintiffs and appellants are about 30 residents of a mobilehome park who are suing the park's owners for various things irrelevant to this appeal. All but one or two of the thirty were represented by a single lawyer (who substituted out during the pendency of this appeal). After discovery commenced the trial judge appointed a former superior court commissioner to act as a discovery referee.

On January 29, 1992, three of the defendants personally served on the plaintiffs' attorney a set of requests for admissions directed at each plaintiff. While none of the 3 sets of requests exceeded 35 (2 sets consisted of 35 requests and the third of 5 requests), because of the large number of plaintiffs the total number of requests requiring a response exceeded 2,200.[10]

Plaintiffs' counsel missed the deadline, apparently because of the mistaken belief that there was no need to prepare responses.[11] Defendants' attorneys did nothing to disabuse him until March 31, 1992, when, at a meeting to discuss stipulated facts for the trial, one of the defendants' attorneys informed plaintiffs' counsel that he had not responded to the requests for admissions; defendants' counsel also told him she intended to seek an order establishing admissions. Two days later, on April 2, 1992, defendants filed with the discovery referee a motion to deem certain matters admitted. Plaintiffs' counsel was served by mail. Also on April 2, the discovery referee ordered any opposition to the motion to be filed by April 9. The referee further ordered that a "conference call" (she would also refer to

---

[10]The proofs of services show thirty-two named plaintiffs receiving, respectively, two sets of thrity-five requests and one set of five requests. That would bring the total to 2,390. However, the record is not clear whether one or two of the plaintiffs may have been represented by another counsel, so we use a conservative figure of 2,200.

[11]The record suggests either or both of two reasons. One, the firm representing the defendants was characterized as "Attorneys for Cross-Complainants" rather than "Attorneys for Defendants" on each set of requests for admission; within a week after the requests were served the defendants withdrew their cross-complaint, which apparently prompted plaintiffs' attorney to conclude the requests for admission had been withdrawn as well. Two, plaintiffs' counsel argued in a motion entitled "request for relief per CCP § 2033 (a) and CCP § 473" that the requests for admission could not be deemed admitted without certain warning language required by *former* section 2033, subdivision (a). The argument suggests that plaintiff's counsel may have been mistaken about the legal force of the requests for admission served upon him. We express no opinion as to whether either reason might constitute surprise, inadvertence, mistake or excusable neglect as those terms are used in various contexts in California procedural law.

it as a "hearing") on the motion be held on April 13, which, in effect, shortened time for notice of the hearing. The moving papers had been served by mail. Thus had there been no shortening of time the hearing would have been scheduled no earlier than April 22.

The reason, if any, for the shortened time is not readily apparent from the record. We do note, however, that a declaration later filed by one of the defendants' attorneys indicated that plaintiffs' counsel was not available for a conference call with the discovery referee on either April 1 or April 2 when (presumably) defendants' counsel wanted to set up a hearing and briefing schedule.

It was not until the morning of the April 13 conference call that plaintiffs' attorney filed his opposition, which was a one-page document incorporating a separate motion filed in the superior court the same day, requesting an extension of time to respond to the requests for admission. The conference call went forward that afternoon, by which time no responses to the requests for admission had been served. During the call plaintiffs' counsel requested a continuance of the "hearing," which prompted a discussion of whether responses could be validly served per section 2033, subdivision (k), prior to the continued hearing. The referee ordered that another hearing would be conducted on the afternoon of April 21, which would focus on whether plaintiffs had *already* forfeited any opportunity to serve their responses.

On the evening of April 20, 1992, plaintiffs served by mail proposed responses to the requests for the admissions. Copies were delivered to the discovery referee the next day. The discovery referee heard argument during the conference call that afternoon. About a week later she filed a report setting forth her findings and recommendations. She reasoned, based on the decisions of the Court of Appeal in the *Courtesy Claims* and *St. Paul Fire & Marine* cases,[12] that a court has no discretion to relieve a defaulting party "where the proposed responses are not submitted by the time of the hearing on the propounding party's Motion for Order Establishing Admissions." The failure to serve responses by April 13 was thus dispositive, and the motion to deem the matters admitted had to be granted. The discovery referee wrote that she recognized the "harsh result," but felt "compelled to follow the precedent set by the applicable decisions of the Courts of Appeal."

The trial judge confirmed the referees' decision, deemed the matters admitted, and a successful summary judgment motion followed in late

---

[12]See *Courtesy Claims Service, Inc.* v. *Superior Court, supra*, 219 Cal.App.3d 52 and *St. Paul Fire & Marine Ins. Co.* v. *Superior Court, supra*, 2 Cal.App.4th 843, cited in footnotes 2, 3, and 7, *ante*.

July.[13] The plaintiffs now appeal from the order that judgment be entered in defendants' favor.[14]

### The "Hearing on the Motion" in Section 2033, Subdivision (k), Does Not Include Hearings on Shortened Notice

■ Under the basic scheme outlined in the introduction to this opinion, that is, under section 2033 as interpreted by *Courtesy Claims Service, Inc.* v. *Superior Court, supra,* 219 Cal.App.3d 52 and *St. Paul Fire & Marine Ins. Co.* v. *Superior Court, supra,* 2 Cal.App.4th 843, it is very easy to see how the discovery referee and trial judge came to the "harsh result" we have here. If a defaulting party's *only* chance to correct a mistake in not responding to requests for admissions is to submit responses by the time of the "hearing," then the entire case is effectively resolved if the date of the hearing passes without any such responses.[15] The single opportunity afforded a litigant to correct what could be an entirely innocent or clerical mistake—and in any event is usually the fault of a litigant's attorney—is the space of time between the notice of the motion to deem matters admitted and the hearing on the motion. In the wake of the *Courtesy Claims* and *St. Paul Fire & Marine* decisions, this space of time represents the *only* safety valve within the statutory scheme governing defaults on admissions requests.[16]

Context, setting and purpose are, of course, indispensable to ascertainment of the meaning of statutes. (E.g., *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224] [words should be " 'construed in context, keeping in mind the nature and obvious purpose of the statute in which they appear' "]; *County of Sacramento* v. *Pacific Gas & Elec. Co.* (1987) 193 Cal.App.3d 300, 309 [238 Cal.Rptr. 305] ["But the

---

[13]The typical pattern is that a party is deemed to have admitted propositions that, to describe them charitably, are dispositive of the case. The summary judgment motion then becomes a mere formality. (E.g., *Brigante* v. *Huang, supra,* 20 Cal.App.4th 1569, 1587 ("Understandably, the ensuing motion for summary judgment was based on the matters deemed admitted; they left nothing to try. And, predictably, it was granted."); *Tobin* v. *Oris, supra,* 3 Cal.App.4th 814 (summary judgment yet again ensuing in the wake of deemed admissions).

[14]We construe the order as incorporating a judgment of dismissal. (*Francis* v. *Dun & Bradstreet, Inc.* (1992) 3 Cal.App.4th 535, 539 [4 Cal.Rptr.2d 361].)

[15]While denominated a "conference call," the proceedings of April 13 were obviously intended to be a "hearing" on the motion to deem matters admitted. The parties treated it as such and the plaintiffs do not contend otherwise here, so we follow suit and also assume, despite its relative informality, that it constituted a "hearing."

[16]The possibility of a protective order under subdivision (e), as discussed in *Brigante* v. *Huang, supra,* 20 Cal.App.4th 1569, does not address the needs of litigants whose attorneys mistakenly conclude there is no need to respond or who otherwise fail to respond. A party who is aware of the need to seek a protective order has obviously not let the admissions request "slip through the cracks."

plain meaning rule does not compel rote application of the common meaning of words without regard to the context in which they are used."].) The evident purpose of subdivision (k)[17] is plainly incompatible with hearings on shortened notice.

As construed by *Courtesy Claims Service, Inc.* v. *Superior Court, supra,* 219 Cal.App.3d 52 [if no response by hearing on motion, motion must be granted], and *Tobin* v. *Oris, supra,* 3 Cal.App.4th 814 [if there is a response by hearing on motion, motion must not be granted], subdivision (k) operates to provide a party with a last chance to respond to a set of admissions requests before those requests are deemed admitted. Where a party has missed the deadline and has yet to submit responses, the merits of the motion *qua motion* are quite irrelevant. A lawyer can prepare the world's finest set of papers opposing the admissions motion, but unless he or she also submits proposed responses, it makes no difference. Under *Courtesy Claims,* the motion must be granted, which means that all the requests will be deemed admitted. Period. On the other hand, a lawyer can prepare a slovenly, illiterate opposition to the admissions *motion*—or even fail to oppose it at all—and as long as the lawyer submits actual responses to the admissions requests before the hearing, under *Tobin* only those requests to which the party is willing to admit anyway are admitted; the balance will not because the motion must be denied.

Subdivision (k) thus functions, in essence, as a substantive provision of law. It acts as a time marker. It insures that before the devastating effects of failing to respond to a set of requests for admissions are visited upon a litigant, that litigant will receive formal notice of the need to prepare responses and some additional time to accomplish that task.

To interpret the "hearing" contemplated by subdivision (k) to include a hearing on shortened time would effectively nullify the evident function of the provision. Shortening of time would mean some litigants might *never* have the opportunity to cure a missed deadline to respond. Such a result not only defeats the function of subdivision (k), but is wholly absurd in view of the possibility that the initial failure to respond might have been wholly innocent.

The facts before us present probably as good an illustration as any as to why "hearing" in subdivision (k) cannot reasonably include hearings on

---

[17]Here is the pertinent language: "The requesting party may move for an order that the genuineness of any documents and the truth of any matters specified in the requests be deemed admitted, as well as for a monetary sanction under Section 2023. The court shall make this order, unless it finds that the party to whom the requests for admission have been directed has served, before the hearing on the motion, a proposed response to the requests for admission that is in substantial compliance with paragraph (1) of subdivision (f)."

shortened time. Here, one attorney, representing some 30 litigants, made a mistake regarding the legal effect of a set of admissions requests which, taken separately for each litigant represented, totaled over 2,200 requests. When the mistake was finally brought to his attention, the propounding party swiftly filed its motion and obtained an order shortening time, allowing the opposing attorney less than two weeks to contact some thirty clients, deliver copies of the requests to them, obtain their responses, and prepare those responses in a form suitable for service. As it turned out, the attorney was able to accomplish the task within 18 days (April 2 to April 20), just a little more than 2 weeks. Had there been no shortening of time he would have had at least 20 days,[18] and his service of responses would have been within the window afforded by section 2033, subdivision (k).

The basis for the shortening of time is not set out on the record, even though the discovery referee prepared an otherwise comprehensive report. What is clear, however, is what the basis was *not*—it was not to accommodate an impending trial or discovery cutoff date. The thought of good reason to shorten time, however, raises a possible objection to our interpretation of subdivision (k). Might the possibility of a good reason to shorten time show that the Legislature was prepared to accept the idea that the "hearing" contemplated in subdivision (k) could be on shortened notice?

No. Even the most compelling reason to shorten time for an admissions motion—an impending trial and discovery cutoff date—does not justify eliminating the ameliorative function of subdivision (k). As pointed out in *Brigante* v. *Huang, supra,* 20 Cal.App.4th at pages 1577-1578, requests for admission differ fundamentally from other discovery devices. Their purpose is not the *uncovering* of information but the *elimination of the need for proof.* (See *id.* at p. 1578.) Eliminating the need for proof, however, is an objective that can still be readily achieved *after* a discovery cutoff date. Counsel still possess the ability to stipulate to facts at any time prior to trial.[19] It happens all the time at pretrial conferences in federal court. On the other hand, as we have explained, a litigant might as well abandon all hope once the "hearing" contemplated in subdivision (k) has occurred without responses.

---

[18]Section 1005. See also Weil and Brown, *supra,* section 9:31, page 9(I) - 15 ("Unless an order shortening time is obtained, the hearing date specified in the Notice must allow for service of the moving papers in compliance with CCP 1005: at least 15 days' notice is required if the papers are served personally; 20 days, if the papers are mailed in California to an address within the State . . . .")

[19]Of course, parties seeking in good faith to resolve matters that need not be tried are not going to obtain stipulations to propositions of the "I admit I should lose" variety discussed in footnote 8, *ante.*

The *Brigante* court also pointed out that even after the Civil Discovery Act of 1986 there remains considerable gamesmanship regarding requests for admission. The court employed the metaphor of a wheel of fortune: by sending overreaching admissions requests, a party can "spin the wheel" and win big if the opponent's attorney fails to respond.[20] An interpretation of subdivision (k) that absolutely precludes any possibility of relief on even a shortened admissions motion merely exacerbates the possibilities of gamesmanship already inherent in the statute. In the case before us, for example, a simple phone call in early March 1992 from defendants' counsel to plaintiffs' counsel inquiring as to why the deadline for responses had been missed might have spared the parties this entire appeal. Defendants' counsel, however, had an incentive to do as little as possible to bring plaintiffs' counsel's default to his attention because it represented the opportunity to lay the case to rest. We do not adopt an interpretation of subdivision (k) which encourages even more gamesmanship by creating what chess players might call the "short time gambit."[21]

*Courtesy Claims Service, Inc.* v. *Superior Court, supra*, 219 Cal.App.3d 52, the primary authority relied upon by the defendants here, did not address the issue of shortened notice. *Courtesy Claims* held that a trial court had no jurisdiction to *continue* the hearing on a motion to allow a defaulting party to file late responses. It does not follow from the holding in *Courtesy Claims*, however, that subdivision (k) contemplates a hearing on *shortened* time. *Courtesy Claims* merely stands for the idea that a trial court cannot subvert the operation of subdivision (k) by going in the other direction and *lengthening* time.

## CONCLUSION

Because the plaintiffs here served their responses to admissions within 20 days of the notice of the motion to deem matters admitted, the discovery referee and the trial court had no choice but to deny the motion. Because the summary judgment motion was predicated on the admissions, it should not have been granted.

---

[20]20 Cal.App.4th at page 1579 ("it is still possible to 'spin the "deemed admission" wheel' ").

[21]Our concurring and dissenting colleague may think this is a one-of-a-kind case. It is not. The bald language of a statute often is unclear as to its every application, and sometimes, such as here, a highly literalistic reading yields a result totally at odds with legislative intent. On top of that, ex parte hearings to shorten time are all too common. The combination of these scenarios (a statute which can be applied in a context never intended by the Legislature plus the common device of shortening time) creates an incentive for games playing.

The judgment is reversed. Appellants are to recover their costs.

Sonenshine, J., concurred.

**CROSBY, J.,** Concurring and Dissenting.—I concur in the result in this virtually sui generis case, but I dissent from the decision to publish the opinion. If the issue has ever presented itself before in the dozen years this division has been in existence, I am unaware of it.

A petition for a rehearing was denied July 28, 1995, and respondents' petition for review by the Supreme Court was denied September 21, 1995.