[No. B048731. Second Dist., Div. Four. Dec. 14, 1993.]

GLENN BRIGANTE, Plaintiff and Respondent, v.
YEE-LEE LO HUANG, Defendant and Appellant.

**COUNSEL**

Hornberger & Criswell, Janik, Lester & Dunn and Douglas Fee for Defendant and Appellant.

Zimmerman & Kahanowitch, Richard Kahanowitch and D. Alton Kelly for Plaintiff and Respondent.

**OPINION**

**EPSTEIN, J.**—This is a case about the discretion of a trial court in ruling on a motion to deem matters admitted under Code of Civil Procedure section 2033.[1]

The defendant was involved in a multicar accident on the Hollywood Freeway. The plaintiff, who was driving one of the other cars, filed a lawsuit against her. Despite substantial efforts to locate the defendant, none of the other parties, nor any of their attorneys or agents, has been able to reach her since the accident. Nor have any of them heard from her. Plaintiff eventually effected service by publication pursuant to a court order. At that point defendant's insurer—for she was insured—appointed a law firm to represent her interests. The attorneys filed a general denial.

[1] All further code citations are to the Code of Civil Procedure except as otherwise indicated.

Plaintiff's counsel sent requests for admissions (RFA's) to defense counsel. The RFA's tracked the complaint, paragraph by paragraph, calling upon defendant to admit or deny the truth of each of its allegations. They also asked her to admit or deny that the plaintiff had suffered at least $500,000 in damages, and that the accident was caused by defendant's violation of two specified provisions of the Vehicle Code. Since responses to RFA's must be verified by the responding party (an attorney's verification will not do when the responding party is a natural person), and since the defendant could not be found, no properly verified response was ever filed. Plaintiff applied to the court for an order that the RFA's be deemed admitted. The motion was granted and, later, plaintiff's motion for summary judgment was granted based on the matters deemed admitted. A $500,000 judgment was entered in favor of plaintiff, against defendant.

The principal issue in this case is whether, under these circumstances, the court had discretion to do anything other than order that the matters in the RFA's be deemed admitted. We conclude that it did. Because the trial court apparently was of the view that it had no discretion to exercise and, in any event, failed to exercise it when asked to do so, we reverse the judgment and remand the case for an exercise of discretion.

## ·Procedural Summary

The defendant in this case is Yee-Lee Lo Huang. She appeals from a summary judgment awarding $500,000 in damages to plaintiff Glenn Brigante in his action for personal injuries.

Plaintiff's unverified complaint alleges that he was driving on the Hollywood Freeway near Lankershim Boulevard when his vehicle was involved in a collision. Several persons, including the defendant, are alleged to have negligently caused the accident. Plaintiff claimed to have suffered severe bodily injuries and property damage to his vehicle as a result of the collision.

Plaintiff's counsel was unable to locate defendant for service of process. His private investigator was informed by a claims adjuster for defendant's insurance carrier that the carrier's investigator also had been "unable to locate [defendant] at any time." The court granted an application for service by publication of summons, pursuant to section 415.50, subdivision (a).

Once service by publication had been effected, defendant's insurance carrier retained a law firm to represent her in the action. Although defendant's whereabouts were still unknown to the insurer and to counsel, an answer was filed on her behalf. The answer consisted of a general denial and

an affirmative defense that plaintiff was negligently operating his vehicle at the time of the accident. This pleading effected a general appearance by defendant. (§ 1014; *California Dental Assn.* v. *American Dental Assn.* (1979) 23 Cal.3d 346, 351 [152 Cal.Rptr. 546, 590 P.2d 401].)

Shortly after that, in February 1987, defense counsel sent plaintiff's attorney a request for a statement of damages pursuant to section 425.11, and served a demand for jury trial. There is no indication in the record that plaintiff ever responded to the request for a statement of damages. A few days after the damages request had been served, plaintiff's attorney served a set of 25 requests for admissions (the 1987 RFA's) on appellant's counsel.[2] The 1987 RFA's tracked the 13 paragraphs of the complaint, with a separate request for each, asking that defendant admit or deny the truth of "each and every allegation contained" in the paragraph. The 1987 RFA's also asked defendant to admit or deny that plaintiff had suffered over $500,000 in damages, including $28,563.94 in medical expenses, $6,500 in lost earnings, $3,500 property damage, and $450,000 in pain and suffering; that the accident was entirely due to defendant's negligence; that she had violated two specified provisions of the Vehicle Code, which violations had "caused" the accident; and that she had no legal or factual defense to the lawsuit.

The effect of these RFA's, if admitted, was to totally establish the plaintiff's lawsuit and all of the damages he claimed, and to obliterate any possible defense. Defendant's counsel moved for a protective order "to be relieved of the time requirements" of section 2033 until such time as defendant was located. The motion also asked that "any further Interrogatories or Requests for Admissions be approved by the Court upon motion by plaintiff prior to being propounded to defendant." In a declaration submitted in support of the motion, defendant's counsel averred that plaintiff's attorney knew that defendant's "whereabouts have been unknown since prior to the plaintiff's service upon her by publication." Although plaintiff's attorney filed written opposition to the motion, he did not appear at the April 2, 1987, hearing on the matter. The trial court granted a protective order, but gave far less relief than had been requested: it extended defendant's time within which to serve a verified response to the RFA's to May 17, 1987, adding that "[t]he strong public interest in resolving matters on the merits warrants the court taking this action."

No verified response to the 1987 RFA's was ever served, nor did plaintiff serve a notice that the truth of the matters stated had been deemed admitted.

---

[2]Because this discovery request was initiated before the July 1, 1987, effective date of the Civil Discovery Act of 1986, it is governed by the former discovery law rather than the new statute. (See Stats. 1987, ch. 86, § 20, p. 355; *Vinson* v. *Superior Court* (1987) 43 Cal.3d 833, 838, fn. 2 [239 Cal.Rptr. 292, 740 P.2d 404].)

That notice was required under the former statute in order to complete the request for admissions process.[3]

Almost a year later, on March 28, 1988, counsel for defendant's insurer entered into a stipulation with counsel for plaintiff and the attorneys for six other defendants, for distribution of $40,000. That sum represented the remaining limits of defendant's insurance policy that had been interpleaded in a separate action. Plaintiff's attorney stipulated to accept $20,000 from the interpleaded funds. By then, plaintiff already had been paid $5,000 by defendant's carrier. The trial court in the interpleader action ordered distribution of the interpleaded funds pursuant to the parties' stipulation. Thus, by March 1988, plaintiff had been paid a total of $25,000 by defendant's insurer, the full amount of the policy limit to a single injured party in a single occurrence.

Each of the parties to the stipulation, other than plaintiff, subsequently executed a release and dismissal of claims against defendant in this action. Plaintiff refused to do so. His attorney explained that plaintiff "would not sign a release and dismissal because he had previously demanded the policy limits of $25,000, which had not been paid until the interpleading of the full policy limits." Plaintiff's attorney told defendant's counsel that plaintiff "wanted to obtain an excess policy judgment and subsequently obtain an assignment from defendant . . . to proceed against the [insurer] for bad faith."

Plaintiff filed an at-issue memorandum in March 1989, in which he stated that general damages of $250,000 and special damages of $30,000 were being sought.

On March 10, 1989, plaintiff served a second set of RFA's on defendant's counsel. (The 1989 RFA's.)[4] The 1989 RFA's were identical to the 1987 RFA's in every material respect. This time, defendant's counsel did not move the court for a protective order, as such. Instead, on April 7, 1989, an attorney for defendant served a purported response to the document, denying

---

[3]Former section 2033, subdivision (a) provided in pertinent part: "Upon failure of a party served with requests for admissions pursuant to this section either to answer or to file objections within the period as designated in the request or as extended by the court, the party making the request may serve upon the other party a notice in writing by certified or registered mail, return receipt requested, notifying the party so served that the genuineness of the documents or the truth of the facts has been deemed admitted. Once the notice is served, the party upon whom the notice is served shall not have the right to apply for relief under the provisions of Section 473 unless a motion requesting relief is served and filed within 30 days after service of the notice."

[4]Since it was served after July 1, 1987, the set of 1989 RFA's is governed by the provisions of the Civil Discovery Act of 1986. (Stats. 1987, ch. 86, § 20, p. 355.)

most of the material requests. The response was verified on information and belief by counsel, in mistaken reliance on section 446.[5] This error was to have a significant diversionary effect on the litigation later on. Eventually, defense counsel acknowledged that an individual party to litigation must personally verify discovery, and that section 446 did not permit an attorney's verification of a request for admissions. (See *Steele* v. *Totah* (1986) 180 Cal.App.3d 545, 550 [225 Cal.Rptr. 635].)

Since, in her verification, the attorney had sworn that she had "information and belief" sufficient to permit her to respond to the RFA's, plaintiff's counsel noticed her deposition and asked that she produce documents relating to the information that furnished the basis for her verification. Defense counsel responded with a motion for a protective order, arguing that counsel's information was covered by the statutory protection for work product and the attorney-client privilege, and invoking the well-established antipathy to depositions of opposing counsel. (See *Spectra-Physics, Inc.* v. *Superior Court* (1988) 198 Cal.App.3d 1487, 1494 [244 Cal.Rptr. 258].) Plaintiff's counsel rejoined that, pursuant to section 2033, subdivision (g), an attorney who verifies a response for requests for admission waives the lawyer-client privilege and any protection for work product.

When the motion for protective order came on for hearing, the trial judge expressed concern that the attorney who had filed the verified response was guilty of misconduct. He denied the motion for a protective order without prejudice to the assertion of any privileges counsel might consider applicable, and without prejudice to a later motion to compel and to have the RFA's deemed admitted. The judge explained that this would allow counsel to "make a record." The deposition was held, and the attorney asserted work-product protection and the attorney-client privilege. She also testified that she thought section 446 permitted her to verify the RFA responses.

The result was a motion by plaintiff to have the 1989 RFA's deemed admitted or, in the alternative, to compel the verifying attorney to answer questions about her verification at deposition. Defendant's counsel filed an opposition to the motion. The cover page of the opposition gave notice that "HUANG submits this Opposition on the grounds that 'good cause, exists to protect defendant against 'unwarranted annoyance, embarrassment, oppression or undue burden and expense.' There are other methods of proving liability and damages rather than deeming these requests for admissions,

[5]In pertinent part, section 446 provides: "[W]here a pleading is verified, it shall be by the affidavit of a party, unless the parties are absent from the county where the attorney has his or her office, or from some cause unable to verify it, or the facts are within the knowledge of his or her attorney or other person verifying the same."

admitted." The opposition was supported by a declaration recounting the history of the litigation and the unavailing efforts to locate the defendant.

We will discuss the September 21, 1989, hearing on the plaintiff's motion more fully in connection with the issue of exercise of trial court discretion in this case. At this point, it is sufficient to observe that the colloquy focused on the conduct of defense counsel in filing an unauthorized response to the RFA's. In the end, the court ruled that it "has already denied defendant's motion for protective order and re-iterates that denial again." The court granted the motion that the 1989 RFA's be deemed admitted, placed the motion for further deposition of the attorney off calendar as moot, and imposed $750 sanctions against the verifying attorney for discovery abuse.

From that point, the trial court proceedings advanced rapidly to a conclusion. Defendant's counsel moved for reconsideration of the order deeming the 1989 RFA's admitted. The issue was reconsidered, and the court declined to change its position. Plaintiff then moved for summary judgment, based on the matters deemed admitted. Defendant's counsel opposed the motion, arguing that it was unfair to award judgment without requiring plaintiff to at least prove his damages. Summary judgment was granted as requested, and judgment for $500,000 was entered for plaintiff against defendant.

A timely appeal from the judgment has been filed.

### DISCUSSION

Preliminary to a discussion of whether the trial court failed to exercise discretion is an examination of the discretion held by a trial court under section 2033. We begin our discussion with that issue, proceed to several technical arguments raised by defense counsel, and then examine the application of discretion in this case. We conclude with a suggestion that there may be a deficiency in the RFA statute warranting legislative review.

### I

Section 2033 is a product of the 1957 Discovery Act, the original general discovery law in this state. (Stats. 1957, ch. 1904.) Its fundamental purpose was "to limit the triable issues and spare the parties the burden and expense of litigating undisputed issues." (*Shepard & Morgan* v. *Lee & Daniel, Inc.* (1982) 31 Cal.3d 256, 261 [182 Cal.Rptr. 351, 643 P.2d 968].)

The original statute was based on the corresponding federal provision, former rule 36 of the Federal Rules of Civil Procedure.[6]

The federal rule still retains the structure initially adapted for the original California statute.[7] Under that statute, a party was permitted to propound a series of propositions to another party with a request that that party respond to them within a stated time. If the propounding party followed the required procedure, a failure to respond to a proposition resulted in it being deemed admitted.[8]

From the beginning, the California statute received a broad construction with respect to the scope of the matters that could be propounded. (See *Buffalo Arms, Inc.* v. *Remler Co.* (1960) 179 Cal.App.2d 700, 703 [4 Cal.Rptr. 103] [RFA's used as basis for summary judgment]; *Cembrook* v. *Superior Court* (1961) 56 Cal.2d 423, 429 [15 Cal.Rptr. 127, 364 P.2d 303] [relevance to subject matter is sufficient justification for RFA; RFA's may relate to opinions and conclusions as well as to facts].)

As Professor Hogan points out, "[t]he request for admission differs fundamentally from the other five discovery tools (depositions, interrogatories, inspection demands, medical examinations, and expert witness exchanges). These other devices have as their main thrust the uncovering of factual data that may be used in proving things at trial. The request for admission looks in the opposite direction. It is a device that seeks to eliminate the need for proof in certain areas of the case." (1 Hogan, *supra*, § 9.1, p. 533.) The Supreme Court put it in similar terms, "[m]ost of the other discovery procedures are aimed primarily at assisting counsel to prepare for trial. Requests for admissions, on the other hand, are primarily aimed at setting at rest a triable issue so that it will not have to be tried. Thus, such requests, in a most definite manner, are aimed at expediting the trial." (*Cembrook* v.

---

[6]See 1 Hogan, Modern California Discovery (4th ed. 1988) section 9.6, page 547, and section 9.13, page 567. Further references to this treatise are denoted, Hogan, with the appropriate volume reference.

[7]Federal Rules of Civil Procedure, rule 36(a) provides in pertinent part: "A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact including the genuineness of any documents described in the request. . . . [¶] The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney, but, unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of 45 days after service of the summons and complaint upon that defendant."

[8]Statutes 1957, chapter 1904, page 3334.

*Superior Court, supra*, 56 Cal.2d at p. 429.) One commentator summarized the purpose of requests for admission, under section 2033 as well as under rule 36 of the Federal Rules of Civil Procedure, as calculated to "compel admissions [of] all things that cannot reasonably be controverted." (Louisell, *Discovery Today* (1957) 45 Cal.L.Rev. 486, 505.)

In light of the scope and purpose of RFA's, some courts stated that the device should not be classified as discovery at all (see, e.g., *Haseltine* v. *Haseltine* (1962) 203 Cal.App.2d 48, 61 [21 Cal.Rptr. 238]; *International Harvester Co.* v. *Superior Court* (1969) 273 Cal.App.2d 652, 655 [78 Cal.Rptr. 515]), although the Supreme Court itself apparently regarded it as a discovery method. (See *Cembrook* v. *Superior Court, supra*, 56 Cal.2d at p. 429.) The Civil Discovery Act of 1986 formally classifies it as discovery. (§ 2019, subd. (a)(5).)

A matter expressly admitted, or deemed admitted by operation of law, was classified as a judicial admission, binding on the admitting party, rather than merely an evidentiary admission that can be controverted by other evidence. (See *Milton* v. *Montgomery Ward & Co., Inc.* (1973) 33 Cal.App.3d 133, 137 [108 Cal.Rptr. 726].) This is now expressly provided in section 2033, subdivision (n).[9]

This preclusive effect of matters admitted under the RFA procedure, together with the broad scope of matters that are subject to being admitted through RFA's, exposed a party who failed to serve a timely response to drastic results: its entire action or defense could readily be lost. (See 1 Hogan, *supra*, § 9.14, p. 572; *Zorro Inv. Co.* v. *Great Pacific Securities Corp.* (1977) 69 Cal.App.3d 907, 914 [138 Cal.Rptr. 410].) The statute was revised in 1978 to require that a warning of the failure to respond be included in the RFA's.[10] A failure to respond was subject to the relief-from-default provisions of section 473, and one court held that the six-month limitation in that statute did not apply to a motion to be relieved from the consequences of a defective denial of RFA's. (*Kaiser Steel Corp.* v. *Westinghouse Elec. Corp.* (1976) 55 Cal.App.3d 737, 744 [127 Cal.Rptr. 838].)

The result was a 1978 amendment requiring a second notice, warning that the matters were deemed admitted. This notice started a 30-day period

---

[9]"Any matter admitted in response to a request for admission is conclusively established against the party making the admission in the pending action, unless the court has permitted withdrawal or amendment of that admission under subdivision (m). However, any admission made by a party under this section is (1) binding only on that party, and (2) made for the purpose of the pending action only. It is not an admission by that party for any other purpose, and it shall not be used in any manner against that party in any other proceeding."

[10]Statutes 1978, chapter 265, page 549.

during which the recipient could apply to the court for relief. (Stats. 1978, ch. 265, p. 549.) Hogan characterizes the 1978 amendment as reflecting a "drastic" approach that "encouraged a form of gamesmanship that subverted the principal goal of the discovery system, the disposition of lawsuits on their merits." (1 Hogan, *supra*, § 9.14, p. 574.) The amendment was followed by a series of decisions involving cases in which the response deadline was missed with disastrous results. Several cases resorted to technical applications of the statute in an apparent effort to avoid these results. (*Ibid.*; and see cases collected in footnote 43; *Hernandez v. Temple* (1983) 142 Cal.App.3d 286 [190 Cal.Rptr. 853], which held that a statutory warning notification was deficient because it was set out at the end of the first paragraph rather than at the end of the entire document, is typical of the technical approach.)

According to Hogan, the statutory machinery engendered requests "made primarily on the chance that this would be one of those cases where the recipient of the requests would postpone or overlook its duty to make as a timely, verified response. [¶] Thus, for the price of a postage stamp and some legal stationery, a litigant could spin the 'deemed admission' wheel. If the requesting party was lucky, there would be no timely, properly verified response. It would then serve a 'notice of deemed admission,' and the least that would happen is that the delinquent party would be at the mercy of some trial judge's notion of what constituted 'mistake, inadvertence, surprise or excusable neglect.' " (1 Hogan, *supra*, § 9.14, pp. 574-575.)

This led the State Bar/Judicial Council Joint Commission on Discovery (Discovery Commission) to recommend revisions to the statute. The present format of the statute reflects this recommendation of the Discovery Commission. Under the new statutory scheme, a party must move the court, on noticed motion, to order that matters be deemed admitted. Only when the court grants the motion are they deemed admitted. Unless a response is received before the hearing, the court is required to grant the motion. (§ 2033, subd. (k); *Tobin v. Oris* (1992) 3 Cal.App.4th 814, 827 [4 Cal.Rptr.2d 736].)

While the present formula ameliorates the harshness of the former law (in Hogan's phrase, "[t]his new procedure has teeth, whereas the one it replaced had fangs" (1 Hogan, *supra*, § 9.14, p. 577)), it is still possible to "spin the 'deemed admission' wheel." (1 Hogan, *supra*, § 9.14, p. 574.)

The statutory machinery to provide some form of relief to a party who had failed to respond to RFA's, or who had presented a legally deficient response, is one of two aspects of the law that relieves its otherwise potentially devastating effects. The other is the authority of courts to grant protective orders against perceived overreaching by the demanding party.

Section 2033 does not require that the RFA's be admitted or denied within the specified time, but only that a *response* be made within that time. The response may be a legally proper set of admissions and denials, a statement of inability to answer because of lack of sufficient information or knowledge (supported by a showing of reasonable inquiry), an objection to the request (§ 2033, subd. (f)), or a motion for a protective order (§ 2033, subd. (e)). (See 1 Hogan, *supra*, § 9.9, p. 554.)

The former RFA statute handled protective orders by incorporating the provisions of former section 2019, subdivision (b), which governed protective orders for depositions. (Former § 2033, subd. (b).)

The deposition protective order provision was quite broad. It allowed the court "for good cause shown," on its own motion or on a "seasonably made" motion of any party or person to be deposed, to order that the deposition not be held, or to restrict its scope in any of a number of ways, "or . . . [to] make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression." (Former § 2019, subd. (b)(1).)

The new RFA statute departs from the incorporation-by-reference format, and sets out its own, self-contained protective order provision. Section 2033, subdivision (e) authorizes the court to grant a protective order on prompt motion by the party on whom the RFA's were served. The principal language is that "[t]he court, for good cause shown, may make any order that justice requires to protect any party from unwarranted annoyance, embarrassment, oppression, or undue burden and expense." A nonexclusive list of possible orders is set out, including orders that particular matters in a set of RFA's, or the entire set, "need not be answered at all." (§ 2033, subd. (e).)[11]

---

[11]The subdivision provides: "When requests for admission have been made, the responding party may promptly move for a protective order. This motion shall be accompanied by a declaration stating facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion. [¶] The court, for good cause shown, may make any order that justice requires to protect any party from unwarranted annoyance, embarrassment, oppression, or undue burden and expense. This protective order may include, but is not limited to, one or more of the following directions: [¶] (1) That the set of admission requests, or particular requests in the set, need not be answered at all. [¶] (2) That, contrary to the representations made in a declaration submitted under paragraph (3) of subdivision (c), the number of admission requests is unwarranted. [¶] (3) That the time specified in subdivision (h) to respond to the set of admission requests, or to particular requests in the set, be extended. [¶] (4) That a trade secret or other confidential research, development, or commercial information not be admitted or be admitted only in a certain way. [¶] (5) That some or all of the answers to requests for admission be sealed and thereafter opened only on order of the court. [¶] If the motion for a protective order is denied in whole or in part, the court may order that the responding party provide or permit the discovery against which protection was sought

The protective order provision is a product of the Discovery Commission. While other portions of the Commission's recommendations for the RFA discovery method were modified by the Legislature, this one was enacted without any change. (See provisions set out in 3 Hogan, *supra*, pp. 248 and 312.) The substantive effect of the provision is explained in the Reporter's Note: "The present CCP § 2033(b) simply provides: 'The provisions of subdivision (b) of Section 2019 are applicable for the protection of the party from whom the admissions are requested under this section.' The proposed subdivision is more expansive in its coverage of protective orders, *but it is not regarded by the Commission as making any substantive change.* Although it lists several types of protection that might be sought, the list is illustrative, not exhaustive. Resort to a protective order is not necessary when the reason for resisting the admission is based on an objection to particular requests. The objection may be asserted in the 'response' to the requests pursuant to subdivision (f)(2)." (3 Hogan, *supra*, p. 253, italics added. Professor Hogan was the reporter for the Discovery Commission.)

■ "Reports of commissions which have proposed statutes that are subsequently adopted are entitled to substantial weight in construing the statutes. . . . This is particularly true where the statute proposed by the commission is adopted by the Legislature without any change whatsoever and where the commission's comment is brief, because in such a situation there is ordinarily strong reason to believe that the legislators' votes were based in large measure upon the explanation of the commission proposing the bill." (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 249-250 [66 Cal.Rptr. 20, 437 P.2d 508]; see also *Hattersley* v. *American Nucleonics Corp.* (1992) 3 Cal.App.4th 397, 401 [4 Cal.Rptr.2d 331]; *Shea-Kaiser-Lockheed-Healy* v. *Department of Water & Power* (1977) 73 Cal.App.3d 679, 688 [140 Cal.Rptr.2d 884].) For these reasons, we regard the Reporter's Note as a valuable aid in construing the protective order provision. Essentially, it tells us that by enacting the Discovery Commission's proposal without change, the Legislature did not intend to modify or restrict the authority given to courts under the former law with respect to this area.

Our Supreme Court reviewed the scope of judicial discretion with respect to RFA's in an early case: "When the objections are predicated upon annoyance, expense, embarrassment, oppression, or any other ground based on justice and equity, the trial court is vested with wide discretion, the

on terms and conditions that are just. [¶] The court shall impose a monetary sanction under Section 2033 against any party, person, or attorney who unsuccessfully makes or opposes a motion for a protective order, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."

exercise of which will not be disturbed by the appellate courts in the absence of an abuse. Such discretion, however, does not authorize the trial court to act on grounds not contemplated by the statute, nor to make blanket orders barring disclosure *in toto* when the factual situation indicates that a just and equitable order could be made that would authorize disclosure with limitations." (*Cembrook* v. *Superior Court, supra,* 56 Cal.2d at p. 427.) "The trial court possesses ample power under [former] sections 2033 and 2019 to correct any abuses that may exist" in RFA's. (*Id.* at p. 430.)

Developments under rule 36 of the Federal Rules of Civil Procedure, the common ancestor of the current federal and state RFA provisions, also recognize considerable trial court discretion. Subdivision (b) of rule 36 allows a district court to permit "withdrawal" or amendment of an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." A general protective order provision, rule 26(c) of the Federal Rules of Civil Procedure, allows federal courts to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, . . ." (See *Brook Village North Associates* v. *General Elec. Co.* (1st Cir. 1982) 686 F.2d 66, 70 [64 A.L.R.Fed. 730] [court may allow withdrawal of admission suffered by default even after trial begins, in order to prevent manifest injustice]; *Hadra* v. *Herman Blum Consulting Engineers* (N.D.Tex. 1977) 74 F.R.D. 113, 114 [rule 36 procedures should not serve as "snare for the unwary"]; *Westmoreland* v. *Triumph Motorcycle Corp.* (D.Conn. 1976) 71 F.R.D. 192, 193 [decision to allow withdrawal of admissions essentially equitable; allowed in this case because admissions almost amounted to complete admission liability, and it was unlikely plaintiff could reasonably believe defendant intended to do so]; *Davis* v. *Noufal* (D.D.C. 1992) 142 F.R.D. 258, 259 [withdrawal of admissions allowed where RFA's called for admission that virtually every allegation of complaint was false, and allowing matters deemed admitted to stand "would block any consideration of the merits"].)

■■■ No case has been cited or found that quite presents the situation confronted here: where matters were deemed admitted because the defendant could not be found.[12] But the law is clear that both state and federal trial courts are authorized to issue protective orders "based on justice and equity."

[12]One case is close. In *Sieb's Hatcheries* v. *Lindley* (W.D.Ark. 1952) 13 F.R.D. 113, 121, the motion to withdraw matters admitted was based on a claim that one of the But the defendants "could not be found" and that another was "somewhere" on the west coast, on vacation. The one who could not be found was a resident of the jurisdiction, and no substantial showing was made with respect to efforts to find the other. The court denied the motion, noting that defense counsel could have asked for an extension of time within which

It seems to us to be well within a proper exercise of discretion for a trial court to grant appropriate relief, on the basis of oppression, from RFA's as devastating as those presented in this case if: (1) the court is satisfied that the defendant is not evading the lawsuit or the discovery demand, and is unaware of their pendency; and (2) that reasonable efforts have been made and are ongoing to find her and apprise her of the litigation and the discovery obligations it entails.

It should be recognized that the trial court's discretion is not limited to ordering that the entire set of RFA's be deemed admitted or relieving the responding party from answering at all. The court is empowered to fashion a remedy that will do justice in the situation with which it is confronted. It may, for example, order that only some matters be deemed admitted. Or it may relieve the defense from admitting or denying the RFA's on condition that it demonstrate a continuing and vigorous effort to locate the defendant. Or it may grant a specific extension of time within which to find the defendant. And, if the court is not satisfied that the defense has made sufficient efforts to locate the defendant, and certainly if there is a basis to reasonably suspect that the defendant is aware of the litigation and obligations for discovery but is attempting to evade those obligations, the court would be well justified in denying relief.

In short, the court has discretion in a case such as this to issue an appropriate protective order. We shall consider how that discretion was invoked and how it was exercised. Before doing so, however, we first address a series of technical arguments made by defense counsel with respect to the 1989 RFA's.

## II

Defense counsel presents several arguments to the effect that the trial court should not have entertained the motion to deem the 1989 RFA's admitted.

The first contention is based on the fact that plaintiff had filed an earlier set of RFA's. As we have seen, the first request was filed under the former provisions of section 2033. The defense obtained an extension of time within which to respond but did not respond, and plaintiff never sent the required notice of matters deemed admitted. Defense counsel argues that plaintiff has elected to come under the provisions of the former law, and its second set of RFA's, which substantially duplicate the first set, is therefore a nullity. They

---

to respond. It may be inferred from the court's discussion that if the defendants were truly unavailable, some relief would have been granted.

base this on *Professional Career Colleges, Magna Institute, Inc.* v. *Superior Court* (1989) 207 Cal.App.3d 490 [255 Cal.Rptr. 5]. In that case, the responding party to interrogatories objected to one of the questions, and the propounding party failed to notice a motion to compel an answer within the statutory period for seeking such relief (45 days; § 2030, subd. (*l*)), or at all. Instead, it simply propounded a second set of interrogatories in which the previously unanswered question was asked again. The responding party again objected, pointing out that the same question had been asked before. This time, the propounding party moved to compel. The court held that, having failed to meet the statutory time limit, the demanding party could not "reset the clock through the stratagem of asking the same question again." (207 Cal.App.3d at p. 493; see also *Vidal Sassoon, Inc.* v. *Superior Court* (1983) 147 Cal.App.3d 681 [195 Cal.Rptr. 295] [time limits of § 2030, subd. (a) are mandatory and jurisdictional].)

Defense counsel analogized the failure to file a timely motion to compel with a tardy motion to have matters deemed admitted. The short answer to this argument is that, under both the former and present RFA statutes, and unlike motions to compel under both statutes and other discovery provisions, there is no time specified within which a propounding party must move the court to have matters deemed admitted. No doubt, a responding party may object or seek a protective order if it can show prejudice or some other equitable basis by which it is unfair to allow the propounding party to move to have RFA's admitted long after they were propounded. But an objection of that kind is directed to the equitable powers of the court, and is quite different from the basis of objection presented in the *Professional Career Colleges* case on which the defense relies.

In a similar vein, defense counsel argues that having invoked the provisions of former section 2033, the plaintiff is bound by them and should not be permitted to refile his RFA's under the new statute. No authority is cited for this proposition, and we know of none. The position of plaintiff's counsel is, essentially, that he decided not to enforce the first set of RFA's, but instead to give the defense another chance by waiting a considerable period of time, and then filing a second set. At best, the defense argument is addressed to the discretion of the trial court based on a claim of repetitious discovery. It did not receive a favorable reception there, and we see no reason to give it a better one here; there was no abuse of discretion.

Finally, defendant's counsel argues that the court had discretion under section 473 to relieve it of its default in failing to send a timely admission or denial of the RFA's. We note, first, that section 473 no longer applies to failures, defaults and omissions under the RFA statute; instead, the subject is

now covered by section 2033, subdivision (k), which requires that a motion to be relieved of a failure to file a timely response must be accompanied by a proper response, and that work product and attorney-client objections are waived. (*Tobin* v. *Oris*, *supra*, 3 Cal.App.4th 814, 827.) The fact is, however, that the resolution of this case does not depend on default analysis, but on whether a proper basis for exercise of discretion was presented, and how that discretion was exercised. We now proceed to that issue.

## III

Defense counsel mistakenly filed an attorney-verified set of admissions and denials to the 1989 RFA's. When plaintiff's counsel called her bluff by noticing the affiant's deposition, on the theory that she evidently knew something and had waived any privilege (§ 2033, subd. (k)), defense counsel moved for a protective order. When the motion for protective order came on for hearing, the trial judge remarked that "it looks as though [the verifying attorney] was playing a game", and that "misconduct appears to have occurred." The court denied the motion without prejudice so that the attorney could be deposed and a record made of the reasons for her conduct.

After the deposition had been conducted (at which work product protection and the attorney-client privilege were invoked to many of the questions), plaintiff's counsel moved to have the RFA's deemed admitted or, in the alternative, to compel answers to the questions as to which a privilege had been invoked. Defense counsel responded with a formal opposition. The first page of the document stated its essential ground: that there is good cause to protect defendant against " 'unwarranted annoyance, embarrassment, oppression or undue burden and expense.' " The good cause was that defense counsel had been unable to find her client, had no contact with her; that there was no basis to believe that she was aware that she was being sued, let alone of her obligations to cooperate in responding to demands for discovery; that plaintiff's counsel was well aware of the fact that no one had any contact with defendant since the accident; and that, based on all of this, it would be manifestly unfair to deem the RFA's admitted.[13]

■ While defense counsel cited oppression as a basis for objecting to plaintiff's motion, rather than raising it by separate motion for protective order, its opposition performed the essential function of apprising the court and opposing counsel of its position and the basis for that position. That is a legally sufficient manner in which to raise the issue; it was not necessary to

---

[13]Defendant's counsel also made several technical arguments, which we have dealt with earlier in this opinion. Counsel acknowledged its error in submitting answers to the RFA's verified by an attorney.

file a separate motion for a protective order. (See 1 Hogan, *supra*, § 9.8, p. 553, and Discovery Commission Reporter's Note to § 2033, subd. (e), at 3 Hogan, *supra*, p. 253.)

At the outset of the hearing, plaintiff's counsel made it clear that his real objective was to have the RFA's deemed admitted, rather than to resume the deposition of the attorney who had verified the purported responsive answers. That attorney did not appear at the hearing, a fact about which the trial judge expressed annoyance.

Immediately after the statement by plaintiff's counsel that he was seeking to have the RFA's admitted, and another remark about the absence of the verifying attorney, the trial judge focused the discussion on the improperly verified response. He stated that it looked like the attorney felt the case was taking an unfortunate turn, and "decided to muddy up the waters by just throwing in [the attorney verification.]" Defense counsel acknowledged the mistake, which he said was innocent, and argued that plaintiff is now trying to "inflict $500,000 worth of damages in an auto accident which is nowhere near that amount in money." Plaintiff's counsel said that he thought the case was worth that much and that defense counsel had been evasive about stipulating to liability. The court then turned the colloquy to the issue of sanctions. After a brief discussion on that subject, it announced its order: "The Court . . . has already denied defendant's motion for a protective order; reiterates that denial again. [¶] The court grants plaintiff's motion to deem the request[s] admitted." The motion to compel a further deposition was taken off calendar as moot, and the verifying attorney was sanctioned $750.

The minute order tracks the oral rendition about a "protective order": "The court has already denied defendant's motion for protective order and reiterates that denial again."[14]

The entire subject was revisited on the motion for reconsideration filed by defendant's counsel. An accompanying declaration set out in detail the efforts that had been made in trying to locate the defendant. They included the retention of an investigator who had tried to reach persons thought to be relatives, and letters sent in English and Mandarin Chinese. There was some indication that defendant had left the country and was in Taiwan.

The trial court again focused the argument on the conduct of the attorney who had verified the RFA responses. Defense counsel again admitted her

---

[14]Inexplicably, the minute order omits the order that the RFA's are deemed admitted. Despite that omission, neither side questions that the court ordered that they be deemed admitted.

mistake and tried to argue the unfairness of having a $500,000 judgment issue against a client who knows nothing about the lawsuit. The court then turned to the technical arguments presented by defense counsel (e.g., the *Professional Career Colleges* case). At that point, the discussion returned to the delicts of the verifying attorney, then to insurance coverage, to whether section 128.5 sanctions should be imposed, and finally to the court's decision. At one point, defendant's counsel appealed to the trial court "as a court of equity" that should try to avert the injustice that would result from the matters being deemed admitted, but the matter was not discussed further. The court denied the motion to reconsider, but noted that it had, in fact, reconsidered its previous order. It concluded that the order was correct, "indeed mandated by the law." The court also denied further sanctions.

Understandably, the ensuing motion for summary judgment was based on the matters deemed admitted; they left nothing to try. And, predictably, it was granted.

If the RFA's should not have been admitted, then the summary judgment based on those admissions is similarly infirm, and the resulting judgment must be reversed. (*Tobin* v. *Oris, supra,* 3 Cal.App.4th at p. 818.) We therefore look through the summary judgment to the order that the RFA's be deemed admitted.

We have discussed in some detail the colloquy on the motion that led to the order that the RFA's be deemed admitted, and on the motion to reconsider that order. It is evident that the trial court never reached the issue of discretion tendered by defense counsel. Instead, the discussion focused almost entirely on the error of the verifying attorney, the consequences that might flow from that error, and the technical ("legal") arguments raised by defense counsel to defeat the motion that the RFA's be deemed admitted.

This failure of the trial court to exercise discretion is also shown by the court's statements in granting the motion to deem the RFA's admitted and denying the motion for reconsideration. In the former, the court "reiterated" its previous denial of a defense protective order. The only motion for a protective order, styled as such, was the motion to prevent the deposition of the verifying attorney. Since the prospect of such testimony was still an issue on the motion to have matters deemed admitted, the court's "reiteration" must have related to that matter. The language used by the court indicates that it was not addressing the request in the opposing papers that it exercise its discretion not to deem the RFA's admitted.

Finally, in denying the motion for reconsideration, the court stated its view that its earlier order was "indeed mandated by the law." We understand

that to mean that the court felt that it had no alternative but to grant the motion that the RFA's be deemed admitted.

█ A trial court may be required to exercise discretion if it has failed to do so. (*Cobb* v. *Superior Court* (1979) 99 Cal.App.3d 543, 552 [160 Cal.Rptr. 561] [failure to consider relevant factors in framing appropriate protective order].) █ As we have pointed out, the court has a variety of options available to it; it is not bound to simply deem all of the RFA's, or none of them, admitted. It may fashion an order in light of the equities of the case and the interests of justice. We do not intend to instruct the court on how to exercise its discretion; we require only that it be exercised.

## IV

The use of RFA's in this case by plaintiff's counsel was entirely within the statute. If that use was predatory, the fault does not lie with the attorney but with the statutory scheme that permits it. The use of sweeping RFA's in a case where the defendant is, and is known to be, absent and cannot be found, is a far cry from the original purpose of the device: to weed out matters that are not the basis of legitimate dispute, so that the trial may proceed more rapidly, with less consumption of the time of court and counsel, and less expense to the parties.[15]

The amount of damages deemed admitted in this case was $500,000, of which less than one-fourth was attributable to special damages. That sum was nearly twice the amount stated in the at-issue memorandum. But it could have been just as well $500 million, or any amount.[16] The present framework of the statute allows a judgment to be predicated entirely on the matters deemed admitted, without even the one-sided prove-up review that is required in the case of a true default under section 585.

---

[15]Some may question why counsel entered defendant's general appearance at all, or why the insurance carrier asked counsel to do so. Had there been no general appearance, the case would have proceeded by default, and plaintiff would have had to "prove up" to a judge—that is, convince a judge of defendant's liability and plaintiff's damages. (§ 585.) But once service by publication was effected, the insurer had a duty to defend its insured against a default judgment. (See *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 605 [222 Cal.Rptr. 276].) If it suffered a default to be taken, its insured would be exposed to liability for the amount of the judgment in excess of policy limits (here, a considerable amount), and the carrier would possibly be open to extra-contract liability for failure to defend. (See *Tibbs* v. *Great American Ins. Co.* (9th Cir. 1985) 755 F.2d 1370, 1375.) The insurer certainly would be subject to action by the plaintiff as judgment creditor under Insurance Code section 11580, subdivision (b)(2). The insurer is not required to effectively concede policy limits, as it would be likely to do if the matter proceeded by default, or leave its insured exposed to an excess award.

[16]The situation is reminiscent of Robert, Lord Clive's response to a committee of Parliament investigating charges that he had accepted bribes while serving as Governor General of Bengal in the 18th Century. Lord Clive related the temptations that had been placed before

Perhaps an attorney verification should be allowed in a case such as this. Perhaps the scope of RFA's should be limited, possibly to exclude the amount of unliquidated damages or other specified issues. And, possibly, this discovery method should not be allowed in this kind of case, where other means to discover information are readily available. These, and issues like them, are matters properly addressed to the consideration of the Legislature. We point them out in the belief that such consideration may be in order.

## DISPOSITION

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion. Each side is to bear its own costs on appeal.

Woods (A. M.), P. J., and Conway, J.,* concurred.

him, and concluded "Mr. Chairman, at this moment I stand astonished at my own moderation." (Fisher, The Life of Lord Clive (Cassell & Co., Ltd., 1918) II, p. 394.)

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.