[No. A077819. First Dist., Div. Two. Oct. 1, 1997.]

ALLEN-PACIFIC, LTD., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
YEE YIM CHAN et al., Real Parties in Interest.

## COUNSEL

McCutchen, Doyle, Brown & Enersen, Robert A. Lewis, Denise S. Blocker and William Carpenter for Petitioner.

Jeffrey J. Chang and Philip H. Lo for Real Parties in Interest.

## OPINION

**KLINE, P. J.**—Petitioner seeks a writ of mandate directing the lower court to set aside its order denying petitioner's motion for an order that the truth of the matters specified in its requests for admissions be deemed admitted and for a monetary sanction, and to enter an order granting the motion. As we explain, petitioner is entitled to the relief sought by its motion; accordingly, we shall grant the petition.

### Facts

On April 1, 1996, petitioner Allen-Pacific, Ltd. commenced the underlying action against real parties in interest Yee Yim Chan and American Golden Pacific Investments, Inc. (collectively defendants). Alleging causes of action for fraud and conversion, the suit was based on the claim that petitioner shipped woodworking machinery worth approximately $700,000 to defendants and that they took possession of the shipment at the dock in Guangzhou in the People's Republic of China and resold it to others without paying for the goods.

Petitioners commenced discovery in April 1996 by seeking to take Chan's deposition. At first petitioner was told that Chan, who resides in Los Angeles and is president of the corporate defendant, was unavailable because he was traveling in China. When in June Chan returned and petitioner again sought

to depose him it was told by counsel he was too ill to testify. Having been told Chan's condition would likely improve by early September and that he was then in California, petitioner propounded several discovery requests to Chan on September 6, including a second request for admissions (RFA). Responses to the requests, which were due on November 14, were not forthcoming. After being told Chan had again departed for China, petitioner on November 20 moved, inter alia, to deem the truth of the matters specified in the RFA's admitted pursuant to Code of Civil Procedure section 2033, subdivision (k),[1] and for monetary sanctions. Prior to the hearing, which was held on December 17, defendants responded to the RFA, but the response was signed by counsel for defendants and was not under oath, and thus not in compliance with subdivision (g), which requires that the response be signed by the party to whom the RFA was directed and that this be done under oath.

At the December 17 hearing, the trial court questioned Maurice K. Wong, counsel for defendants, about the nature of Chan's medical condition.[2] Mr. Wong provided the court certified translations of medical diagnoses of Mr. Chan but admitted that, as he was not a physician, he did not fully understand the documentation. The court directed Wong to obtain further information about his client's medical condition and file it with the court no later than January 10, 1997. The court also advised counsel that a response to an RFA signed only by counsel and unverified by a party was invalid and directed him to file a verified response before the next hearing, which was set for January 17.

In the course of making the foregoing rulings, the court explicitly rejected petitioner's assertion that, as a verified response had not then been filed, the court lacked discretion to deny its motion to deem admitted the matters specified in the RFA and for monetary sanctions, and that the court also had no authority to extend the time for filing a verified response to that request.

On January 13 defendants mailed petitioner a document which purported to be a "supplement" to its earlier, unverified, response to petitioner's RFA. This response was properly verified by Chan, who executed the verification form on January 3 at Shenzen in the People's Republic of China.

At the hearing on January 17, and on the basis of discovery responses defendants made subsequent to the December 17 hearing, the court denied

[1] All statutory references are to the Code of Civil Procedure. All references to subdivisions relate to section 2033.

[2] The matter was heard before a commissioner in a discovery department, which does not employ a court reporter. Because transcripts of this and the subsequent hearing do not exist, our descriptions of what transpired rely on the declarations of counsel for the parties, which do not materially differ with respect to the determinations made by the commissioner.

petitioner the relief it sought. In an order dated January 30, the court stated in material part that, because "defendants served a verified response to [petitioner's] second set of requests for admissions, having served an unverified response before the hearing opened on December 17 . . . . [petitioner's] motion to deem admitted matters covered in its requests for admissions is denied." Petitioner's request for monetary sanctions was presumably denied for the same reason.

*Discussion*

■  The sole question is whether the trial court had discretion to deny petitioner's motion that the truth of the matters specified in its RFA be deemed admitted and for monetary sanctions.

Section 2033, subdivision (g) provides, as material, that "[t]he party to whom the requests for admissions are directed shall sign the response under oath, unless the response contains only objections."

Subdivision (k) states that "[i]f a party to whom the requests for admission have been directed fails to file a timely response, that party thereby waives any objection to the requests, including one based on privilege or on the protection for work product under Section 2018."[3] The subdivision later provides that "[t]he requesting party may move for an order that . . . the truth of any matters specified in the requests be deemed admitted, as well as for a monetary sanction under Section 2023. The court *shall* make this order, unless it finds that the party to whom the requests for admissions have been directed has served, *before the hearing on the motion*, a proposed response to the requests for admission that is in substantial compliance with paragraph (1) of subdivision (f) [relating to the form and substance of answers or objections to the requests]. It is *mandatory* that the court impose a monetary sanction under Section 2023 on the party or attorney, or both, whose failure to serve a timely response to requests for admission necessitated this motion." (Italics added.)

Defendants tacitly concede, as they must, that the response to the RFA provided in behalf of Chan prior to the initial hearing on petitioner's motion failed to conform to the statutory prescription, as it was not signed by a party

---

[3]"However, the court, on motion, may relieve that party from this waiver on its determination that (1) the party has subsequently served a response that is in substantial compliance with subdivision (f) [relating to the form and substance of answers and objections], and (2) the party's failure to file a timely response was the result of mistake, inadvertence, or excusable neglect." (Subd. (k).) *This clause is not here relevant because defendants never filed such a motion and indeed never suggested they had any basis upon which to object to the requests for admission.*

and was not under oath. As succinctly stated in *Appleton* v. *Superior Court* (1988) 206 Cal.App.3d 632 [253 Cal.Rptr. 762], "[u]nsworn responses are tantamount to no responses at all." (*Id.*, at p. 636, citing *Zorro Inv. Co.* v. *Great Pacific Securities Corp.* (1977) 69 Cal.App.3d 907, 914 [138 Cal.Rptr. 410]; see also *Brigante* v. *Huang* (1993) 20 Cal.App.4th 1569, 1575 [25 Cal.Rptr.2d 354] [§ 446 does not permit an attorney's verification of requests for admission].) Defendants should have anticipated that Chan's failure to timely file a verified response would have serious consequences.

"Under the provisions of section 2033, subdivision (k), a court *must* grant a motion to have admission requests deemed admitted where responses have not been served prior to the hearing or, if such responses were served, they were not in substantial compliance with section 2033, subdivision (f)(1)." (*Tobin* v. *Oris* (1992) 3 Cal.App.4th 814, 827 [4 Cal.Rptr.2d 736], italics added.) It is no secret that "[t]he law governing the consequences for failing to respond to requests for admission may be the most unforgiving in civil procedure. There is no relief under section 473. The defaulting party is limited to the remedies available in the statute specifically governing requests for admission, section 2033, and within section 2033 there is no general provision for relief. The closest analog to section 473 in section 2033 is subdivision (m) [relating to the amendment or withdrawal of admissions]. Subdivision (m), however, has been held inapplicable to missing the deadline for responding to admissions requests. A party who has failed to file responses must look to subdivision (k) for relief, and subdivision (k) operates in a completely nondiscretionary manner. The propounding party need give no warning . . . it simply files a motion to deem the matters covered by the requests admitted. The nonresponding party then has until the 'hearing on the motion' to serve responses to the admissions request. If the party manages to serve its responses before the hearing, the court has no discretion but to deny the motion. *But woe betide the party who fails to serve responses before the hearing. In that instance the court has no discretion but to grant the admission motion, usually with fatal consequences for the defaulting party.* One might call it 'two strikes and you're out' as applied to civil procedure." (*Demyer* v. *Costa Mesa Mobile Home Estates* (1995) 36 Cal.App.4th 393, 394-396 [42 Cal.Rptr.2d 260], fns. omitted, italics added; accord, *Courtesy Claims Service, Inc.* v. *Superior Court* (1990) 219 Cal.App.3d 52, 56 [268 Cal.Rptr. 30].)

Defendants maintain that notwithstanding the strictness with which the requirements of section 2033 are ordinarily enforced, the statute does not deprive trial courts of the discretion necessary to insure "justice and equity." This argument, which is primarily based on *Cembrook* v. *Superior Court*

(1961) 56 Cal.2d 423 [15 Cal.Rptr. 127, 364 P.2d 303] and *Brigante* v. *Huang, supra,* 20 Cal.App.4th 1569,[4] does not impress us.

Defendants rely on *Cembrook* for no apparent reason other than the presence in the opinion of the following sentence: "When the objections [to discovery] are predicated upon annoyance, expense, embarrassment, oppression, or any other ground based on justice and equity, the trial court is vested with wide discretion, the exercise of which will not be disturbed by the appellate courts in the absence of an abuse." (56 Cal.2d at p. 427.) Examined in the context in which it appears, this statement provides far too slender a reed to support defendant's reading of section 2033. First of all, *Cembrook* was decided in 1961, shortly after enactment of our original general discovery statute in 1957 (Stats. 1957, ch. 1904, § 3, pp. 3321-3336) and long before major revisions to the statute were made in 1986, including subdivision (k), the provision at issue here. The case is, in any event, not helpful to defendants. In *Cembrook* the defendant objected to approximately 40 requests for admissions of facts, moving to strike the requests and to be relieved of the necessity of providing any answer. The trial court agreed and granted the motion in toto. The Supreme Court felt this went too far. Agreeing the requests for admissions were "confusing and ambiguous," the court stated that "neither ambiguity nor burden are of themselves sufficient grounds for denying the right to discovery *in toto* . . ." (56 Cal.2d at p. 428.) The trial court's discretion does not include the power to deny discovery in toto merely because the litigant asks too much, the court declared, though "it does embrace the power to sustain objections to the unnecessary or repetitive question." (*Ibid.*) The point of *Cembrook* is that the trial court exercised discretion which exceeded that conferred by section 2033. As stated by the court, the statute "does not authorize the trial court to act on grounds not contemplated by the statute, nor to make blanket orders barring disclosure *in toto* when the factual situation indicates that a just and equitable order could be made that would authorize disclosure with limitations." (56 Cal.2d at p. 427.)

*Cembrook* does not assist defendants. The present version of section 2033 does not impliedly prohibit but in subdivision (k) specifically *authorizes* the

---

[4]Defendants also rely on two federal cases, *Brook Village North Associates* v. *General Elec. Co.* (1st Cir. 1982) 686 F.2d 66 and *Westmoreland* v. *Triumph Motorcycle Corp.* (D.Conn. 1976) 71 F.R.D. 192. These cases both involve application of rule 36(b) of the Federal Rules of Civil Procedure (28 U.S.C.) which relates not to the circumstances in which a trial court is obliged to deem matters admitted but those in which a party may be permitted to *withdraw or amend* admissions. Federal rule 36(b) is the analog not of subdivision (k) of section 2033, which is applicable here, but subdivision (m). Moreover, subdivision (m), which like rule 36(b) embodies equitable considerations, is the only provision of section 2033 that adopts criteria similar to those of section 473. As noted in *Demyer* v. *Costa Mesa Mobile Homes Estates, supra,* 36 Cal.App.4th at page 395, subdivision (m) is "inapplicable to missing the deadline for responding to admissions requests."

peremptory relief defendants attempt to compare to that stricken in *Cembrook*. Even though it was permissive, the exercise of trial court discretion here, like that in *Cembrook*, exceeds the authority conferred under the statute and reaches a result that conflicts with the policy reflected in the pertinent provision of the statute. The only policy discussed in *Cembrook* is that of facilitating discovery. The series of major revisions to section 2033 after the 1961 decision in *Cembrook*[5] introduced another important policy: elimination or at least diminution of the discovery delays which had become endemic. Considered in the light of that new and important policy, and the new language of the statute calculated to rigorously enforce that policy, the order here is as questionable as the one in *Cembrook*. Furthermore, as we shall later explain, we do not think the challenged order achieves justice and equity, as defendants insist.

*Brigante* v. *Huang*, *supra*, 20 Cal.App.4th 1569, also provides defendants little assistance. In that case the trial court believed it had no discretion to deny a motion to deem admitted the matters referred to in RFA's even though the parties were all aware that the defendant could not be found. Defense counsel opposed the motion to have the RFA's deemed admitted, arguing "that there is good cause to protect defendant against ' "unwarranted annoyance, embarrassment, oppression or undue burden and expense." ' The good cause was that defense counsel had been unable to find her client, had no contact with her; that there was no basis to believe she was aware she was being sued, let alone of her obligations to cooperate in responding to demands for discovery; that plaintiff's counsel was well aware of the fact that no one had any contact with defendant since the accident; and that, based on all of this, it would be manifestly unfair to deem the RFA's admitted." (*Id.*, at p. 1585, fn. omitted.) Despite the strong showing of the impossibility of obtaining a response to the admissions, and even though the effect "was to totally establish the plaintiff's lawsuit and all of the damages he claimed, and to obliterate any possible defense," the trial court granted the motion to deem the truth of the matters referred to in the RFA's admitted. (*Id.*, at p. 1573.)

The Court of Appeal reversed, concluding it is "well within a proper exercise of discretion for a trial court to grant appropriate relief, on the basis of oppression, from RFA's as devastating as those presented in this case if: (1) the court is satisfied that the defendant is not evading the lawsuit or the discovery demand, and is unaware of their pendency; and (2) that reasonable efforts have been made and are ongoing to find her and apprise her of the

---

[5]These revisions are described in *Brigante* v. *Huang*, *supra*, 20 Cal.App.4th 1569, 1576-1581.

litigation and the discovery obligations it entails." (*Brigante* v. *Huang*, *supra*, 20 Cal.App.4th at p. 1583.) "In short," the Court of Appeal declared, "the [trial] court has discretion in a case such as this to issue an appropriate protective order." (*Ibid.*)

This case differs from *Brigante* in a variety of ways. The chief difference, of course, is that defendant is not and has never been missing and has at all times been fully aware of the pendency of this lawsuit and the discovery demands. The requests for admissions were not filed in bad faith knowing a response was impossible. As will be seen, if there is any bad faith in this case it belongs to defendants, not petitioner. Not only were Chan's whereabouts known at all material times, but he was in contact with counsel and could have filed a verified response, as he later did, without leaving China.

Another important factor rendering this case fundamentally different from *Brigante* is Chan's frustration of petitioner's numerous requests for discovery prior to filing of the motion to deem the RFA's admitted. The voluminous correspondence between the parties reveals the following pertinent facts: Petitioner commenced discovery efforts seven months before the filing of the motion now at issue. Shortly after petitioner first sought to depose Chan, in April 1996, he departed for China. When petitioner served its first request for the production of documents, on May 15, Chan did not respond. On June 20, after the response was due, petitioner was informed Chan had returned from China but was too ill to comply with the deposition request, though he would agree to toll any time limits on petitioner's request to compel responses until he was well enough to participate in discovery. Chan finally responded to the document request on August 19, three months after it was due, but stated that, due to "memory lapses" he suffered as a result of a head injury, he could not "recollect" any documents of the sort requested. Because Chan refused to acknowledge he possessed any documents in the categories identified by petitioner, the trial court sanctioned defendants by prohibiting them from introducing any documents at trial not previously produced by petitioner.

On September 6 petitioner filed an initial set of requests for admissions and form interrogatories. Without responding, Chan left again for China. Counsel for the parties then conducted a joint interview with Dr. Howard Fullman, Chan's treating physician in Los Angeles. Dr. Fullman stated that Chan suffered from cirrhosis of the liver and a low-platelet count and was a carrier of hepatitis B, but that he was aware of no medical reason Chan was unable to participate in discovery. One of petitioner's attorneys confirmed this conversation in a letter to Chan's counsel dated October 15, 1996, which

states in part as follows: "I asked Dr. Fullman if Mr. Chan's current condition precluded him from participating in discovery of this case. As you know, Dr. Fullman indicates that his wife was an attorney; he knew what a deposition was; he knew what interrogatories were; he knew what a document request was. With that knowledge, he stated unequivocally that Mr. Chan's medical condition would not prevent or preclude him from participating in any form of discovery in this case." Thereafter, defense counsel informed petitioner Chan would return in time for trial, which had earlier been set for a date in November, but agreed to a continuance of trial so discovery could be completed.

On November 11, counsel for petitioner wrote Chan's attorney that there still had been no response to the numerous requests that had been made to both defendants for responses to requests for admissions, form interrogatories and notices of deposition, and that he was still waiting to learn whether Mr. Chan would be available for deposition on alternate dates that had been discussed. Counsel closed the letter by stating that, "[i]n view of the difficulty in obtaining discovery in this matter, Allen-Pacific will seek the court's assistance if it does not receive the required responses by the close of business on November 14." Chan's attorney, Mr. Wong, responded that this letter was "counterproductive and in bad faith" and stated that "anything we need to work out, you are free to call and discuss," but that "your artificial and self-imposed deadline, without any prior notice, appears to be calculated for deliberate non-compliance." No responses to petitioner's discovery responses were filed by November 14. Two days later petitioner moved for an order compelling responses to the discovery requests earlier made and to deem admitted the matters specified in the RFA's. Chan did not file a proposed response to the requests even then, though if he had done so prior to the hearing he would likely have escaped sanction. (Subd. (k).)

The vice of the order challenged in this case is that it appears to be based on the belief that the defect of the initial response (the improper verification by counsel) was the result of "mistake, inadvertence, or excusable neglect," and that petitioner would not be substantially prejudiced by denial of its motion and the granting of a continuance to enable defendants to file proper responses to the RFA. These criteria may be employed under section 2033 only for one limited purpose: to determine whether the trial court should grant leave for a party to withdraw or amend an admission, a matter governed not by subdivision (k), with which we are here concerned, but subdivision (m). The subdivision (m) test, which adopts language similar to that of section 473, was erroneously employed by the trial court. As pointed out in *Brigante*, ". . . section 473 no longer applies to failures, defaults and

omissions under the RFA statute; instead, the subject is now covered by section 2033, subdivision (k), which requires that a motion to be relieved of a failure to file a timely response must be accompanied by a proper response. . . ." (20 Cal.App.4th at pp. 1584-1585; accord, *Demyer* v. *Costa Mesa Mobile Home Estates*, *supra*, 36 Cal.App.4th at p. 395 [Section 473 criteria employed in subdivision (m) are "inapplicable to missing the deadline for responding to admissions requests."].)

Section 2033 provides only two forms of relief to a party who fails to respond to RFA's or who, as here, files a legally deficient response. The first is to file a proper response after the motion to deem the matters specified in the RFA's admitted, but "before the hearing on the motion," as permitted under subdivision (k). The second is to seek a protective order under subdivision (e). Where, as here, neither form of relief is sought, the party propounding the unanswered RFA is entitled to the relief specified in subdivision (k) regardless of prejudice. The failure to file a timely response is deemed prejudicial by the statute; there is ordinarily no judicial authority to gainsay that presumption, which can be rebutted, if at all, only by a very unusual situation such as that in *Brigante* v. *Huang*, *supra*, 20 Cal.App.4th 1569, where response was impossible and the party propounding the RFA knew it.

No reason appears why Chan's illness prevented him from filing a belated response after petitioner's motion to deem the RFA's admitted was made (which put counsel on notice of the danger) and before the hearing on the motion. The diagnosis of Chan's physicians in China did not satisfy the trial court that he was physically or mentally unable to respond; Dr. Fullman, on the other hand, confidently opined that Chan's health problems provided no genuine obstacle to participation in discovery.

Nor did Chan seek a protective order. Moreover, while it may be true that a trial court can treat opposition to a motion to deem admitted matters specified in an RFA as a request for a protective order under subdivision (e) (*Brigante* v. *Huang*, *supra*, 20 Cal.App.4th at pp. 1585-1586), such an order could not be granted in this case without subverting the mandatory provisions of subdivision (k), because Chan was aware of the requests for admission long before the motion to deem admitted was filed and never explained to the satisfaction of the trial court his failure to timely respond.

*Conclusion*

For the foregoing reasons, the trial court exceeded its authority in denying petitioner's motion to deem admitted the matters specified in its RFA's and

for monetary sanctions, which are mandatory. The fact that granting petitioner's motion would assertedly prevent defendants from mounting any tenable defense is immaterial even if true, as this is the risk they assumed by not responding appropriately to petitioner's RFA, even after it moved to deem the matters specified therein admitted. (See *Courtesy Claims Service, Inc.* v. *Superior Court, supra,* 219 Cal.App.3d 52, 57.)

Let a peremptory writ of mandate issue directing the respondent court to vacate that portion of its discovery order dated January 30, 1997, denying petitioner's motion to deem admitted matters covered in its requests for admissions and for monetary sanctions, and enter a new and different order granting said motion. Petitioner shall be awarded costs. (Cal. Rules of Court, rule 56.4.)

Lambden, J., and Ruvolo, J., concurred.