Filed 10/9/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TAKAO KATAYAMA, | |
| Plaintiff and Appellant, | G063872 |
| v. | (Super. Ct. No. RIC1818934) |
| CONTINENTAL INVESTMENT GROUP et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Riverside County, L. Jackson Lucky IV, Judge. Reversed and remanded with directions.

Moon & Dorsett and Dana Moon for Plaintiff and Appellant.

Ryan Carvalho & Retz, Kirk Retz and Tamami Yoshida for Defendants and Respondents.

Takao Katayama appeals from a judgment entered after a grant of nonsuit. During discovery, the trial court applied a statutory subdivision governing his untimely proposed response to requests for admission. In this appeal, we construe the subdivision's phrase "substantial compliance." (Code Civ. Proc., § 2033.280, subd. (c) (section 2033.280(c).)[1]

Katayama's underlying lawsuit alleged the defendants withheld information about a shopping center he purchased from them. During discovery, the defendants propounded requests for admission that Katayama failed to respond to, so they moved for an order deeming that he admitted the contentions in the requests. Before the motion hearing, Katayama served a proposed response that prefaced his substantive answers to each request with general objections that had been waived by operation of statute.

The trial court granted the motion, concluding the objections rendered the response not in "substantial compliance with section 2033.220" (requiring, inter alia, "complete and straightforward" answers), as required by section 2033.280(c). At trial two years later, after Katayama did not present any evidence, in part because of the discovery order, the court granted the defendants' nonsuit motion and entered judgment for them.

On appeal, Katayama contends that his proposed response substantially complied with section 2033.220 and, therefore, the trial court's discovery order erroneously precluded his intended trial evidence. We agree and hold that the presence of waived objections in a proposed response governed by section 2033.280(c) does not necessarily prevent "substantial

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

2

compliance with Section 2033.220." We reverse and remand for further proceedings.

## STATEMENT OF FACTS

In 2016, Katayama purchased from defendants Continental Investment Group, Andrew Chang, and Linda Chang (collectively defendants)[2] a shopping center that included a dry cleaning business as a tenant. Two months before escrow closed, defendants gave Katayama what he describes as a 2013 report of a "visual inspection assessment" conducted for the property. The day before escrow closed, Katayama received a recommendation from his bank to conduct further testing on the property's subsurface. Defendants declined to extend the escrow closing deadline and Katayama moved forward with the sale.

Katayama claims he subsequently incurred hundreds of thousands of dollars in "cleanup" and "monitoring" costs for the property because of hazardous substances in the soil under the dry cleaning business. He claims that one month before the visual assessment report, a five-page document called the "Optimal Report" was created for defendants, based on a relatively in-depth "soil vapor survey" conducted for the property.[3]

In other words, Katayama claims defendants presented him only with the visual assessment report and withheld the Optimal Report. He further claims that the owner of the dry cleaning business, Alfonso Patino,

---

[2] Unless relevant to our discussion, we do not distinguish between defendants.

[3] Purportedly included with the report was an invoice billing Continental Asset Management, a company connected to defendant Continental Investment Group, $1,700 for "soil vapor testing."

would have testified at trial to witnessing events in 2013 that corroborated Katayama's assertions related to the Optimal Report.

PROCEDURAL HISTORY

*A. Litigation and the Order Deeming Requests for Admission Admitted*

In 2018, Katayama filed the underlying lawsuit against defendants, alleging fraud and violations of Civil Code section 1102 et seq.[4] In April 2020, defendants propounded 20 requests for admission to Katayama (the RFAs). After his response deadline lapsed, defendants moved to have the RFAs deemed admitted, pursuant to section 2033.280, subdivision (b) (the deemed admissions motion).[5]

A hearing on the motion was conducted in July 2020. Ten days before the hearing, Katayama served an eight-page verified document that included one-word answers—either "Deny" or "Admit"—to all but one of the RFAs. The answers were prefaced, however, with general objections, based on

---

[4] The article containing Civil Code sections 1102 through 1102.19 is titled "Disclosures Upon Transfer of Residential Property." (Stats. 1985, ch. 1574, § 2.)

[5] The subdivision provides that "[t]he requesting party may move for an order that the genuineness of any documents and the truth of any matters specified in the requests be deemed admitted, as well as for a monetary sanction under chapter 7 (commencing with § 2023.010)." (§ 2033.280, subd. (b).)

4

the grounds of attorney-client privilege, attorney work product, relevance, and admissibility as evidence.[6]

Because of the objections, the trial court (Judge L. Jackson Lucky IV) rejected Katayama's proposed response as failing to substantially comply with Section 2033.220, as required by section 2033.280(c), both of which we quote further below. As a result of rejecting the proposed response, the court granted the deemed admissions motion and imposed on Katayama mandatory sanctions totaling $1,810 (the RFA order).[7]

---

[6] The prefatory statements stated: "Plaintiff [i.e., Katayama] interposes an objection to each and every Admission to the extent that such admission requires the disclosure of information protected from discovery by attorney-client privilege or by the attorney work product doctrine. Plaintiff further interposes an objection as to each and every Admission to the extent that it requires the disclosure of information that is not relevant to the subject matter of this action, or it is neither admissible into evidence [n]or reasonably calculated to lead to the discovery of admissible evidence. In provided [*sic*] specific responses to the propounded admissions, Plaintiff does not waive any of the foregoing objections, nor any other objections specifically stated in response to the admissions.

"Plaintiff further states that he has not yet completed his investigation and discovery with regard to the subject matter of this action and, although the specific answers to admissions hereinafter set forth represent facts as they are known or believed to exist. As of the present time, Plaintiff reserves the right to provide additional or different information as new facts are discovered."

[7] In a minute order, the trial court stated: "Unless the responding party serves a code-compliant response before the hearing, the court must grant the motion. [Citation.] The responding party has not done so. Attorney fees are mandatory. [Citation.] [The c]ourt has discretion to deem any, all[,] or none of the request admitted . . . ."

5

*B. Failed Attempt to Address the RFA Order*

Thirteen months later, in 2021, Katayama filed an unsuccessful motion for leave to withdraw the deemed admissions, pursuant to section 2033.300 (the withdrawal motion). Katayama's first attorney in this matter claimed that, after issuing "dozens of subpoena[s] to every [soil] testing company within a 75[-]mile radius of the property" and not finding any helpful evidence, he secured the Optimal Report through a subpoena served outside of the initial search radius, based on information Patino fortuitously recalled in 2021.

The trial court (Judge Harold W. Hopp) denied the withdrawal motion because, as the court accurately noted, its briefing did "not explain why the admissions [i.e., ordered by the RFA order] were the result of mistake, inadvertence or excusable neglect," as required for the withdrawal motion. (§ 2033.300, subd. (b).) Katayama does not challenge this ruling on appeal, but we mention it further below for comparative analysis.

*C. Trial Proceedings*

In March 2022, the month before trial, defendants moved in limine to prohibit Katayama "from introducing any [trial] evidence" that would be "inconsistent with the admissions [deemed] admitted by" the RFA order. The motion produced three rulings. Although they are ultimately

immaterial to this appeal, we briefly discuss them further below, with respect to Katayama's burden to show prejudicial trial court error.[8]

One week later, after Katayama's attorney "informed the [trial] court that she could not proceed with an opening statement or the trial" because she could not present the Optimal Report to the jury, the court granted defendants' motion for nonsuit and entered judgment for them. Katayama timely appealed.

## DISCUSSION

Katayama contends that his objections contained in his proposed response to the RFAs should not have precluded a finding of substantial compliance with Section 2033.220, as required by section 2033.280(c). For the reasons discussed below, we agree that the trial court erred in its statutory interpretation and sufficient prejudice has been shown.

### I.

STANDARD OF REVIEW AND STATUTORY CONSTRUCTION PRINCIPLES

We generally review an exercise of statutory authority on discovery issues for abuse of discretion (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 772), but where material facts are undisputed, we review the interpretation of an authorizing statute de novo (*City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 64 (*City of Los Angeles*)). If the plain text is susceptible to more than one reasonable

---

[8] First, the trial court ruled to allow Katayama to present at trial any evidence that was discovered after the RFA order. Second, the court ordered an Evidence Code section 402 hearing to determine the admissibility of the Optimal Report. Third, after testimony by multiple witnesses and oral arguments by counsel, the court ruled that Katayama's second attorney had not demonstrated the proper foundation for the report. Katayama does not dispute the correctness of the rulings.

interpretation, "we must ""select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]'" [Citations.]" (*Ibid*.) Where relevant to the search for legislative intent, "the language of a specific section must be construed in the context of the larger statutory scheme of which it is a part. [Citations.]" (*Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 811.)

## II.

### GOVERNING STATUTES

Section 2033.280 provides that the initial penalty for failing to timely respond to requests for admission is a "waive[r of] any objection to the requests, including one based on privilege or on the protection for work product under Chapter 4 (commencing with Section 2018.010)." (§ 2033.280, subd. (a).) The same subdivision authorizes a motion for relief from the waiver, as quoted further below.

Central to the RFA order, section 2033.280(c) states in relevant part that a "court shall" grant a motion to deem request for admission contentions admitted "unless [the court] finds that the party to whom the requests for admission have been directed has served, before the hearing on the motion, a proposed response to the requests for admission that is in substantial compliance with Section 2033.220."

In turn, section 2033.220 states: "(a) Each answer in a response to requests for admission shall be as complete and straightforward as the information reasonably available to the responding party permits. [¶] (b) Each answer shall: [¶] (1) Admit so much of the matter involved in the request as is true, either as expressed in the request itself or as reasonably

8

and clearly qualified by the responding party. [¶] (2) Deny so much of the matter involved in the request as is untrue. [¶] (3) Specify so much of the matter involved in the request as to the truth of which the responding party lacks sufficient information or knowledge. [¶] (c) If a responding party gives lack of information or knowledge as a reason for a failure to admit all or part of a request for admission, that party shall state in the answer that a reasonable inquiry concerning the matter in the particular request has been made, and that the information known or readily obtainable is insufficient to enable that party to admit the matter."

The statutes just quoted are two of ten contained in an article titled "Response to Requests For Admission." (Stats. 2004, ch. 182, § 23; §§ 2033.210–2033.300 [art. 2, ch. 16, tit. 4, pt. 4].) Five years before the article's enactment, the California Supreme Court, in *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973 (*Wilcox*), analyzed its earlier iteration contained within former section 2033. (Compare §§ 2033.210–2033.300 with former § 2033, subds. (f)–(m).)[9]

The *Wilcox* court did not construe the *substantial compliance* phrase this appeal hinges on. But the high court did provide guidance on the statutory scheme that section 2033.280(c) is a part of, construing the scheme

_____

[9] Former section 2033 and other statutes were repealed in 2004 "to facilitate nonsubstantive reorganization of the rules governing civil discovery." (Recommendation: Civil Discovery: Nonsubstantive Reform (Sept. 2003) 33 Cal. Law Revision Com. Rep. (2003) p. 809.) Because the reorganization was nonsubstantive and there have been no subsequent material changes to the statutes we analyze, we will refer to the predecessor provisions as they are currently organized. We will refer to: former section 2033, subdivision (k) as section 2033.280; former section 2033, subdivision (f)(1) as section 2033.220; and former section 2033, subdivision (m) as section 2033.300.

as a "graduated system of enforcement [that] furthers the legislative purpose behind [the then existing statute covering responses to requests for admission,] by fitting the punishment of the nonresponding party to the offense." (*Wilcox, supra*, 21 Cal.4th at p. 982; accord *City of Los Angeles, supra*, 17 Cal.5th at p. 74 [describing "carefully calibrated scheme of escalating sanctions" in "method-specific chapters" of Civil Discovery (§ 2016.010 et seq.)].)

The *Wilcox* court described the progression of enforcement as follows: "Under [section 2033.280, subdivision (a)], the initial penalty for failure to respond is the waiver of all objections. Once the propounding party files a motion for a deemed admitted order [pursuant to section 2033.280, subdivision (b)], the nonresponding party then faces an additional penalty— mandatory monetary sanctions. (See [§ 2033.280(c)].) . . . Now, the nonresponding party can only escape a binding admission by establishing 'mistake, inadvertence, or excusable neglect' and no substantial prejudice to the propounding party. ([§ 2033.300.]) The nonresponding party also faces the likely imposition of more sanctions at the discretion of the trial court. (See *ibid*.)" (*Wilcox, supra*, 21 Cal.4th at p. 982.)

Prior to *Wilcox*, Court of Appeal opinions had held that litigants who made admissions pursuant to court orders (like the RFA order at issue here) could *not* obtain subsequent relief through section 2033.300 because the statute was construed as unavailable for court-ordered admissions. (E.g., *St. Paul Fire & Marine Ins. Co. v. Superior Court* (1992) 2 Cal.App.4th 843, 851- 852 [section 2033.300 governs only when party seeks to correct earlier *actual* response].) *Wilcox* explicitly disapproved this caselaw by holding that such motions (like the withdrawal motion not at issue in this appeal) were available to such litigants. (*Wilcox, supra*, 21 Cal.4th at p. 983, fn. 12

[disapproving *St. Paul* and other opinions].) Most relevant here, the high court construed the statutory scheme of enforcement for response failures as less rigid than intermediate appellate courts had at that time. In the quarter-century since the decision, we discern no legislative actions that have commented on the interpretation.

III.

STATUTORY INTERPRETATION ANALYSIS

*A. Substantial Compliance*

   The trial court implicitly found that the general objections prefacing Katayama's substantive answers to the RFAs rendered relief under section 2033.280(c) unavailable because the objections meant less than substantial compliance with section 2033.220 had occurred. The objections had been waived by operation of section 2033.280, subdivision (a), and Katayama had not applied for relief from the waiver through the same subdivision, which provides: "The court, on motion, may relieve that party from th[e] waiver on its determination that both of the following conditions are satisfied: [¶] (1) The party has subsequently served a response that is in substantial compliance with Sections 2033.210, 2033.220, and *2033.230*. [¶] (2) The party's failure to serve a timely response was the result of mistake, inadvertence, or excusable neglect." (Italics added; the waiver relief protocol.)

11

The italicized section listed in the protocol covers objections[10] and that section is *not* listed in section 2033.280(c).

The fact that section 2033.230 is listed in the waiver protocol but not in section 2033.280(c) poses a challenge in construing "substantial compliance" for a section 2033.280(c) proposed response because two contrasting interpretations are equally reasonable. On one hand, section 2033.230's absence can be interpreted as supporting a tolerant construction that allows waived objections to be present in a response. Underlying this interpretation, *substantial compliance* should not depend on whether relief from waiver was obtained, but instead focus on whether answers in a proposed response are "as complete and straightforward" as reasonably possible, as explicitly required by section 2033.220, the only section specified by section 2033.280(c).

On the other hand, section 2033.230's absence from section 2033.280(c) can also reasonably support a less tolerant interpretation of *substantial compliance* that prohibits the presence of objections, absent a preexisting grant of court relief pursuant to the waiver relief protocol. Underlying this interpretation, the absence reflects legislative intent that a compliant response should afford no room for an already waived objection.

_____

[10] Section 2033.230 states: "(a) If only a part of a request for admission is objectionable, the remainder of the request shall be answered. [¶] (b) If an objection is made to a request or to a part of a request, the specific ground for the objection shall be set forth clearly in the response. If an objection is based on a claim of privilege, the particular privilege invoked shall be clearly stated. If an objection is based on a claim that the matter as to which an admission is requested is protected work product under Chapter 4 (commencing with Section 2018.010), that claim shall be expressly asserted." The section's earlier version, without any difference material to this appeal, was located at former section 2033, subdivision (f)(2).

Based on *Wilcox*, the scale between the competing interpretations is tipped by the divergence in consequences that can follow, as illustrated by the procedural path of this matter. When the trial court ruled against Katayama's proposed response in the RFA order, the court indicated that he was free to seek the remaining statutory relief possible, based on section 2033.300.[11] But, as noted, Katayama's first counsel did not file the withdrawal motion based on that statute until over a year after the RFA order and, unwisely, did not address why the order had been entered as a result of "mistake, inadvertence, or excusable neglect." (§ 2033.300, subd. (a).)

Counsel's lack of diligence in filing the withdrawal motion illustrates there is no guarantee that a party who has become the subject of an order like the RFA order will subsequently recover by clearing the more difficult hurdles of showing "'mistake, inadvertence, or excusable neglect' and no substantial prejudice to the propounding party. ([§ 2033.300.])" (*Wilcox, supra*, 21 Cal.4th at p. 982.) In this particular case, the net result of the RFA order was a permanent limitation of Katayama's ability to litigate critical issues (see *Demyer v. Costa Mesa Mobile Home Estates* (1995) 36 Cal.App.4th 393, 401 [request for admission is discovery tool "differ[ing] fundamentally" from usual truth-seeking functions of "other discovery devices"], disapproved on another ground by *Wilcox, supra*, 21 Cal.4th at p. 983, fn. 12), based on a relatively narrow construction of a provision covering intermediate discovery litigation (§ 2033.280(c); see *Wilcox, supra*, 21 Cal.4th at p. 982; accord *City of Los Angeles, supra*, 17 Cal.5th at p. 74). Precedents guide our focus away from objections.

_____

[11] We note that "[r]elief under section 473 is unavailable when the discovery act provides analogous, if more limited, relief." (*Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1107.)

13

Given the undisputed nature of Katayama's "proposed response" (§ 2033.280(c)), which we assess as a collective whole (*St. Mary v. Superior Court, supra*, 223 Cal.App.4th at pp. 779–780 [disapproving of trial court deeming only some of at-issue requests admitted]), the severity of the result reached by the RFA order did not comport with the legislative intent behind the words "substantial compliance" (§ 2033.280(c)). As noted, all but one of Katayama's verified answers to the RFAs consisted of one word, either "Admit" or "Deny," and the exception contained a reasonably clear two-sentence qualification (§ 2033.220, subd. (b)(1) [allowing reasonable and clear qualification]) that did not claim an inability to answer (see § 2033.220, subd. (c) [requirements for claiming "lack of information or knowledge"]).[12]

In other words, if Katayama's objections are ignored, it is clear his substantive answers were far more "complete and straightforward" than not. (§ 2033.220, subd. (a).) Then, even after incorporating his objections into our assessment, we conclude the grounds asserted—relevance, admissibility, and privileges—did not negate the complete and straightforward nature of the answers because none of the objections claimed an inability to understand and respond to the RFAs.

To be sure, it is a fair criticism to point out that allowing a proposed response to include waived objections would ignore the waiver relief protocol set forth by the Legislature and therefore blunt the explicit penalty

---

[12] The exceptional response was to defendants' RFA no. 6, which requested that Katayama "[a]dmit that [he] purchased the [property] in its existing condition." Katayama's proposed verified answer stated in its entirety: "Admit only to the extent that I purchased the property and relied on the Seller's disclosures as to the condition of the property. I would not have purchased the property if the Seller had admitted on the sale disclosure that they were aware of possible or actual hazardous materials contamination."

14

of waiver. But we conclude mandatory monetary sanctions required by section 2033.280(c), also noted in *Wilcox, supra*, 21 Cal.4th at page 982, should be the primary enforcement mechanism for time and energy spent dealing with such waived objections.[13]

Our conclusion on *substantial compliance* is reinforced by the alternative ways to address objections in a proposed response other than treating their presence as an all-or-nothing issue. For example, the trial court's order on the deemed admissions motion could have specified a reasonable amount of time for Katayama to provide an actual response that did not include objections unless an order relieving him from their waiver was secured through the waiver relief protocol. (See § 128, subd.(a)(8) [court has power to "amend and control its process and orders so as to make them conform to law and justice"]; see also *Mellone v. Lewis* (1965) 233 Cal.App.2d 4, 12 [trial court powers for pretrial orders].)

The alternatives support flexibility for trial court discretion when adjudicating "substantial compliance." (§ 2033.280(c).) A tolerant construction of the phrase also comports with the earlier-discussed statutory scheme for graduated enforcement (*Wilcox, supra*, 21 Cal.4th at p. 982), as well as our prioritization of substance over form (Civ. Code, § 3528) and California's public policy interest in allowing parties to litigate the merits of

---

[13] According to the reporter's transcript, the trial court pointed out it was only issuing half of the monetary sanctions that defendants had requested, albeit while deeming admissions made by Katayama because of section 2033.280(c)'s substantial compliance requirement. The court emphasized the wrong part of the section. (See *City of Los Angeles, supra*, 17 Cal.5th at pp. 63, 74 [on sanction severity and nature of monetary sanctions].)

their claims (*Wilcox, supra*, 21 Cal.4th at p. 983; accord *City of Los Angeles, supra*, 17 Cal.5th at p. 71).

Based on the above, we hold that the assertion of waived objections does not necessarily prevent "substantial compliance with Section 2033.220" as required by section 2033.280(c). Compliance analysis should prioritize the nature of the substantive answers in the proposed response. While waived objections should be a factor in the assessment,[14] their presence should primarily be addressed through the amount of mandatory monetary sanctions imposed. In this matter, we conclude the trial court erred in finding that Katayama's proposed response did not substantially comply with section 2033.220.

*B. Verification*

Defendants' remaining argument on *substantial compliance* is unavailing. They assert for the first time on appeal that Katayama's proposed

---

[14] As a hypothetical example of objections controlling *substantial compliance* analysis: if a proposed response contained nothing but waived objections, then the lack of substantive answers would likely justify a conclusion that the response was not as complete and straightforward as reasonably possible and therefore not substantially compliant with section 2033.220 as required by section 2033.280(c). Similarly, if a response included objections aimed at the form of the underlying requests for admission, such that the responding party was disclaiming an ability to comprehend the requests, those type of objections could also justify a conclusion that the response was not as complete and straightforward as reasonably possible.

16

response should be held noncompliant because the wording of his verification rendered it "equivocal."[15]

Defendants provide no meaningful discussion of legal authority for their challenge to the form of Katayama's verification. (See *McComber v. Wells* (1999) 72 Cal.App.4th 512, 522-523 [appellate brief must contain reasoned argument and, if possible, legal authority to support its contentions or the court may treat the claim as waived and not address the argument on its merits].) More fundamentally, they do not dispute that they did not present the argument to the trial court. Even assuming a meritorious point by defendants, the court could have simply addressed the form of the verification by ordering another version to be provided within a reasonable time, without categorically rejecting Katayama's proposed response. (See *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 [general rule of forfeiture for theories raised for first time on appeal].) We decline to entertain defendants' argument on the point. (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275-1276, fn. 3.)

IV.

PREJUDICE

Finally, in addition to demonstrating error, Katayama must also show resulting prejudice to succeed on appeal. (Cal. Const., art. VI, § 13.) We conclude he has done so, despite not addressing the possibility that the

---

[15] Defendants acknowledge that Katayama's verification contained the phrase "I declare, under penalty of perjury, that the foregoing is true and correct," immediately before his signature, but claim he "hedged" in other parts of his verification by explaining information had been supplied in part by his "attorneys or other agents."

17

exclusion of the Optimal Report from trial was the result of an in limine ruling and not the RFA order.

As noted earlier, subsequent to the RFA order in 2020, the trial court allowed Katayama an opportunity, in 2022, to have the Optimal Report admitted as trial evidence. Specifically, the court ruled he was *not* foreclosed from presenting evidence "discovered after the date of" the RFA order. The court conducted a hearing on the admissibility of the report and ultimately found that Katayama failed to demonstrate a sufficient foundation for the Optimal Report. Given that he does not challenge the ruling on appeal, it is undisputed that the Optimal Report was deemed inadmissible for trial because of reasons totally independent of the RFA order.

Based on the 2022 opportunity Katayama was afforded, if the exclusion of the Optimal Report was the only evidence at issue, this appeal would fail for lack of prejudice resulting from the RFA order, the single ruling challenged on appeal. But because the parties agree that the order precluded Patino from testifying at trial, and Katayama has sufficiently demonstrated that Patino would have testified to 2013 events corroborating Katayama's lawsuit assertions, we conclude he has carried his burden to demonstrate prejudice on appeal. The preclusion of Patino's testimony supports a reasonable probability that the trial court would not have granted defendants' motion for nonsuit had the RFA order not been entered. (*MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1045.)

## V.

### DIRECTIONS FOR FURTHER PROCEEDINGS

In sum, we conclude the trial court's judgment must be reversed with directions to retry the matter (if Katayama so chooses). (§ 43; see *People v. Barragan* (2004) 32 Cal.4th 236, 248-249 [discussing effect of law of the

18

case doctrine on new proceeding after remand]; see also *Hall v. Superior Court* (1955) 45 Cal.2d 377, 381 ["'[A]n unqualified reversal remands the cause for a new trial [citation], and places the parties in the trial court in the same position as if the cause had never been tried, with the exception that the opinion of the court on appeal must be followed so far as applicable'"].) The court is directed to (1) vacate the RFA order granting defendants' motion based on section 2033.280(c), (2) enter an order denying the motion, (3) reconsider the amount of mandatory sanctions to award, and (4) allow a reasonable time for discovery to be conducted by the parties, prior to any trial.

## DISPOSITION

The judgment is reversed and the matter remanded for further proceedings consistent with this opinion. Katayama is entitled to his costs in this appeal.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


SANCHEZ, J.

19